**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**Robert A. MARKEE, Defendant-Appellant.**

**No. 24206.**

United States Court of Appeals, Ninth Circuit.

April 22, 1970.

Rehearing Denied May 25, 1970.

Howard R. Lonergan (argued), Portland, Or., Robert A. Markee, for appellant.

John D. Collins (argued), Asst. U. S. Atty., Sidney I. Lezak, U. S. Atty., Portland, Or., for appellee.

Before DUNIWAY, WRIGHT, and TRASK, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Following a trial before a jury, Robert A. Markee was convicted of causing false representations to be made to the Federal Housing Administration (FHA) in violation of 18 U.S.C. § 1001 (1964).[1] The false representations were contained in two documents, a sales report and an accountant's financial statement, submitted to the FHA in connection with an application by Mt. Angel Towers, Inc., a retirement home developer, for initial endorsement for mortgage insurance under Section 231 of the National Housing Act, as amended, 12 U.S.C. § 1715v (1964). Appellant, the exclusive sales agent for Mt. Angel Towers, was indicted because the false representations concerned the number of pre-sold units in the development. Count I of the indictment, upon which appellant stands convicted, is set forth in the margin.[2]

---

[1.] Section 1001 provides, in relevant part: "Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully * * * makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

[2.] "COUNT I. During July, 1964, the exact date being unknown to the Grand Jurors, within the State and District of Oregon, defendant Robert A. Markee did

On appeal, Markee concedes that the representations contained in the two documents were false and fictitious, but challenges the sufficiency of the evidence to show that he willfully caused either of the documents to be submitted to the FHA within the meaning of 18 U.S.C. § 2(b) (1964).[3] Appellant also contends that Count I should have been dismissed because that count failed to specify which of the two documents received by FHA would be relied upon to prove the allegations in the indictment. We affirm.

## I.

## SUFFICIENCY OF THE EVIDENCE

Appellant was hired by Mt. Angel Towers, Inc., in 1961 to be the exclusive sales agent for the planned retirement home in Mt. Angel, Oregon. The agency agreement provided that appellant receive $250 for each pre-sold unit, a 10% commission on each unit sold after the opening of the retirement home for a 13-year period, a right of first refusal on all health and accident insurance for occupants of the home, and the appointment of appellant as activities and promotions director at a minimum salary of $8,000 per year for 12 years.

Between March 8, 1962, the date FHA first evinced a favorable attitude toward the retirement project, and July 15, 1964, the date initial endorsement was secured, the primary stumbling block to FHA endorsement was the advance sale requirement of more than 50% of the 204 retirement units.[4] In addition, Mt. Angel Towers was required to provide a financial statement accounting for all "founders' fees" and related monies collected from applicants for the purpose of securing occupancy in the project.

Throughout this period appellant and his sales organization shared office space with Mt. Angel Towers. Phyllis Bell, appellant's sister and the government's primary witness, was the office secretary for appellant and Mt. Angel Towers.

At the trial Mrs. Bell identified a number of applications for admission into the retirement home and "founders" contracts as having been prepared by appellant prior to July 1, 1964. Most of

willfully and knowingly make and cause to be made to the Federal Housing Administration, an agency of the United States, false, fictitious and fraudulent statements and representations as to material facts in a matter within the jurisdiction of the Federal Housing Administration upon documents and writings submitted to the Federal Housing Administration for the purpose of obtaining an initial endorsement for insurance by the Federal Housing Commissioner of a mortgage note under provisions of the National Housing Act, in that defendant Robert A. Markee made and represented and caused to be made and represented to the Federal Housing Administration that: (1) there were then 110 sales of living units in a proposed retirement residence to be known as Mt. Angel Towers, located at Mt. Angel, Oregon, and in connection with which an initial endorsement for insurance of a mortgage note by the Federal Housing Commissioner was being sought as previously set forth; (2) there were then sales of more than 50% of the total living units at such proposed residence; and (3) there was then due to Mt. Angel Towers, Inc., an Oregon corporation, proposed mortgagor of said residence, founders' membership fees receivable in the sum of $616,283.00;

"Whereas in truth and in fact and as defendant Robert A. Markee then and there well knew such statements and representations as to these material facts were and each of them was overstated, fraudulent, fictitious and false; in violation of Title 18, United States Code, Section 1001 and Section 2."

The jury returned a verdict of not guilty on Count II of the two-count indictment. Count II charged violations of 18 U.S.C. § 1001 and 2 for the purpose of obtaining final endorsement during April 1966.

3. 18 U.S.C. § 2(b) provides:
"Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

4. On February 28, 1964, the Federal Housing Commissioner fixed 60% as the advance sale requirement prior to initial endorsement.

the names on the applications and contracts were relatives or friends of appellant and Mrs. Bell. She testified that the signatures of the prospective tenants had been forged by her with appellant's knowledge and, in at least one instance, by appellant himself. In a report attached to one of the forged applications, appellant had noted: "This deal is no good—if not disturbed could be used for 60% qualification."

Ledger cards were prepared by Mrs. Bell for each sale, including the fictitious ones, indicating the date of sale, money received, and balance owing. On July 1, 1964, when the accountant went through the corporate records, he relied on the ledger cards in arriving at the number of presales and accounts receivable. His report, received by FHA on July 7, 1964, indicated a total of $616,-283.00 in "founders' membership fees receivable," and, in an attached letter:

> "At July 1, 1964, one hundred ten (110) units of the two hundred four (204) units available for sale had been sold according to the corporate records."

On July 9, 1964, two days after receiving the accountant's report, FHA received a photocopy of a typewritten and unsigned "Sales Report," purporting to be from appellant to Mt. Angel Towers. It contained essentially the same information as the accountant's report. However, because we hold that there was sufficient evidence from which the jury could conclude that appellant willfully caused the misrepresentations in the accountant's report, we need not consider appellant's contention that the government failed to prove that he was the author of the sales report.

■ The evidence shows that appellant did not actually prepare or physically submit the accountant's financial statement to FHA. Therefore, the question is whether there is sufficient evidence to show (1) that he *caused* the misrepresentations to be submitted in the financial statement and, (2) if so, that he did this *willfully*.[5]

There can be little doubt that the evidence is sufficient to show that appellant caused the false representations in the accountant's financial statement. He actively participated in the falsification of the corporate records by preparing and, in at least one instance forging, the applications for admission and founders' contracts. These forged documents were then translated onto the ledger cards by Mrs. Bell which, in turn, led to the misrepresentations in the financial statement submitted to FHA. The fact that one of the intermediaries, Mrs. Bell, may have been criminally liable as co-principal, aider and abettor, or co-conspirator, is of no moment. *See* United States v. Lester, 363 F.2d 68, 73 (6th Cir. 1966); Malatkofski v. United States, 179 F.2d 905, 916 (1st Cir. 1950).

■ The second element, the requirement that defendant *willfully* cause the forbidden act to be done, means that the act must not only have been the cause-in-fact of the defendant's activities, but also that defendant have the specific intent of "bringing about" the forbidden act. United States v. Kenofskey, 243 U.S. 440, 37 S.Ct. 438, 61 L.Ed. 836 (1917); United States v. Leggett, 269 F.2d 35, 37 (7th Cir. 1959). In the context of the case now before us, this means that the evidence must be sufficient to show that appellant, at the time he and Mrs. Bell engaged in falsifying the sales records, did so for the purpose of causing another, *i. e.*, the accountant, to submit the false statements to the FHA.

---

5. Had the indictment simply charged appellant with making the false applications for admission and "founders'" contracts, we would then be faced with a different problem of determining whether these false documents were "within the jurisdiction" of the FHA. *See* Gilbert v. United States, 359 F.2d 285, 287 (9th Cir. 1966); Ebeling v. United States, 248 F.2d 429, 433–436 (8th Cir. 1957).

We have reviewed the record and acknowledge that appellant presented a credible attack on the government's case. Other persons involved in the promotion of the retirement home were keenly interested in securing FHA's initial endorsement. Moreover, as appellant's testimony indicated, he may well have had another motive in falsifying the sales records which, though not to be condoned, would have taken him out of the realm of criminal liability as a causer.[6]

But we do not sit as a second jury. Our function is to review the record in the light most favorable to the government and to ascertain whether "the jurors reasonably could decide that they would not hesitate to act in their own serious affairs upon factual assumptions as probable as the conclusion" that the misrepresentations in the accountant's financial statement were the intended and necessary result of appellant's deliberate action of falsifying of the sales records. United States v. Nelson, 419 F.2d 1237 (9th Cir. dec. Nov. 20, 1969).

Applying this test, we believe the jury was justified in reaching its verdict. Appellant actively engaged in the falsification of the sales records. He was aware of the FHA's advance sale requirement and, in one instance, was shown to have concealed a fictitious sale in order to meet the 60% requirement. Other promoters of the retirement home testified that they relied on appellant as to the number of sales; and appellant was shown to have a strong financial interest in securing FHA endorsement of the Mt. Angel Towers mortgage.

We conclude that the district court did not err in denying the motions for judgment of acquittal.

## II.

### THE INDICTMENT

As alluded to earlier in this opinion, the government also sought to establish its case by showing appellant as the author of a "sales report" received by FHA two days after receipt of the accountant's financial report. Both documents contained essentially the same false information,[7] but the indictment, while particularizing the misrepresentations, did not specify the source of the misrepresentations other than to state that they were contained in "documents and writings" submitted to FHA. Appellant contends that the government's failure to specify in the indictment which document it intended to rely upon at trial created the vice condemned in Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962).

In *Russell*, defendants were charged with refusing to answer "pertinent" questions before a congressional committee in violation of 2 U.S.C. § 192 (1962). The indictments did not specify the subject under inquiry by the committee, and the Court held them defective for failing to apprise the defendants of the essential facts charged in order that they could prepare a defense of "non-pertinency."

A distinction is to be drawn between an indictment which fails to set forth the essential facts necessary to apprise a defendant of the crime charged and one which, though it specifies the necessary facts, fails to specify the theory upon which those facts will be proved at trial or the evidence upon which the proof will rest. Rule 7(c), F.R.Crim.P., provides that an indictment

---

6. Appellant testified that the fictitious applications and contracts of sale were prepared as "reservations" because some prospective tenants had stated that they would purchase once the building was completed and appellant believed that he would be assigned a number of the units by Mt. Angel Towers as a means of purchasing the agency contract. Appellant also testified that he had no intention of defrauding FHA.

7. The accountant's financial statement included the accounts receivable, but did not contain a computation of the percentage of sales, whereas the sales report did contain a percentage of sales, but did not give a total of the accounts receivable. Both documents represented that 110 of the 204 units had been sold as of July 1, 1964.

must state the essential facts constituting the offense charged, but may allege that the means by which the defendant committed the offense are unknown or that he committed it by one or more specified means. As the Advisory Committee notes to Rule 7 point out, this has the salutary effect of eliminating the use of multiple counts for the purpose of alleging the commission of a single offense by different means or in different ways. *See* 8 J. Moore, Federal Practice ¶ 7.04 (2d ed. 1969).

■ Here, unlike *Russell*, the indictment set forth with particularity all of the essential facts necessary to constitute an offense under 18 U.S.C. § 1001. Appellant had complete access to the government's evidence prior to trial and no contention is made that he was not aware of the two theories upon which the government hoped to prove its case. Moreover, both documents stemmed from the same false sales records prepared by appellant and, as we have held, it was the preparation of these records with the intent that they be used to deceive FHA which constituted the essential element of the crime charged. Under these circumstances, we hold that the court below did not err in refusing to dismiss the indictment.

Affirmed.