UNITED STATES of America, Appellee,

v.

Charles D. ERB and Franklin S. DeBoer, Defendants-Appellants.

Nos. 70, 71, Dockets 76–1143, 76–1178.

United States Court of Appeals, Second Circuit.

Argued Sept. 3, 1976.

Decided Oct. 1, 1976.

Certiorari Denied Nov. 29, 1976.
See 97 S.Ct. 493.

Edward M. Shaw, New York City, for appellant Erb.

Gary P. Naftalis, New York City (Orans, Elsen & Polstein; Leslie A. Lupert, New York City, Harold B. Tevelowitz, Kew Gardens, N. Y., on the brief), for appellant DeBoer.

John A. Lowe, Asst. U. S. Atty., New York City (Robert B. Fiske, Jr., U. S. Atty. for the S. D. of N. Y., New York City, Frederick T. Davis, Asst. U. S. Atty., New York City, on the brief), for appellee.

Before KAUFMAN, Chief Judge, FEINBERG and VAN GRAAFEILAND, Circuit Judges.

FEINBERG, Circuit Judge:

Charles D. Erb and Franklin S. DeBoer appeal from judgments of conviction in the United States District Court for the Southern District of New York after a two-week trial before Charles L. Brieant, Jr., J. The jury found Erb guilty on four counts of filing false registration statements with the Securities and Exchange Commission (SEC) in connection with the public offering of the common stock of Xprint Corporation (Xprint), and DeBoer guilty on one of those counts. 15 U.S.C. § 77x, 18 U.S.C. § 2. In each instance, the false statement was that an alleged nominee rather than the defendant was the owner of shares of Xprint. The jury also found Erb guilty on one count of causing letters to be mailed on the same subject in furtherance of a scheme to defraud, 18 U.S.C. §§ 1341, 2, and on four counts of causing the transmission of prospectuses containing false statements on the same subject. 15 U.S.C. §§ 77e(b), 77j.[1] Judge Brieant sentenced Erb to concurrent terms of 18 months in prison followed by 31 months on probation. The judge fined De-Boer $5,000 and imposed a prison term of five months, followed by 31 months of probation. Both Erb and DeBoer appeal, making a variety of contentions. For reasons set forth below, we affirm.

---

1. The jury also acquitted DeBoer on nine counts in which he was jointly charged with Erb, and three counts of violating 18 U.S.C. §§ 1001, 2. The judge dismissed one conspir- acy count and two mail fraud counts against both defendants at the end of the Government's direct case.

## I The Facts

The relevant facts, as the jury could have found them, are not very complicated, although the case is unusual in one respect. The false statements here, unlike those charged in most indictments involving securities fraud, were not meant to hide the true value of the Xprint stock being offered to the public. Rather, for reasons explained below, the false statements were designed to conceal the status of defendants as stockholders. Both defendants, along with George Van Aken, an unindicted accomplice and chief government witness, were partners in a New York Stock Exchange member firm, Baerwald & DeBoer. In April 1969, Erb and Van Aken agreed with Xprint to make a private placement of its stock in exchange for unregistered shares of Xprint common stock to be sold for a nominal sum. On April 22, Erb and Van Aken approached DeBoer about the private placement, and he too purchased shares at a substantially reduced price. By that time, however, Baerwald & DeBoer had also agreed to be Xprint's underwriter in a public offering. DeBoer pointed out that, as partners in the firm, if they registered their Xprint stock in their own names, they would run afoul of regulations of the SEC and the National Association of Securities Dealers (NASD), which barred excessive underwriters' compensation. DeBoer, therefore, wanted his stock registered in the name of James Lovelett, his nominee. Erb and Van Aken subsequently decided to use Dr. Scott Skillern and Donald Sedgwick, respectively, as their nominees, and they confirmed their decision in a May meeting with various representatives from Xprint.

The partners were then faced with SEC and NASD filing requirements. In June 1969, Baerwald & DeBoer received formal "investment letters" to be signed by Lovelett and Skillern. Van Aken gave the Lovelett letter to DeBoer who returned it with the necessary signature, and Erb forwarded his letter to Skillern. On August 20, 1969, the registration statement, falsely listing Lovelett as a selling shareholder and Skillern as owner of 50,000 shares, was filed with the SEC. Six weeks later DeBoer resigned from the firm.

While all of the criminal charges against the defendants were based on their false statements filed in 1969, they did conduct other transactions in Xprint stock. In January 1970, the Xprint public offering was cancelled because it was never completely sold to the public. Despite this, Erb managed to make a public market for the stock at prices in excess of the public offering price. DeBoer was one of the purchasers of Xprint stock in this "aftermarket."

## II Contentions of Erb

### Tape recordings of conversations

On appeal, Erb presses most strongly a number of arguments growing out of the receipt in evidence of three tape recorded conversations between Erb and his nominee, Skillern, in late 1969. Skillern testified that he recorded the conversations with Erb's permission "for a matter of record keeping" since "we are talking about such big money." The conversations were indeed replete with large numbers and references to complicated stock transactions, some of them suggestive of the use of Skillern's heavy losses for Erb's tax benefit. Erb maintains that this evidence denied him a fair trial because the conversations were irrelevant and "a classic example of inadmissible proof of other crimes,"[2] because the prosecutor in his summation was thus able to accuse Erb of trying to "cheat on taxes" and because the prosecutor violated *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), when he deliberately withheld from the defense Skillern's pretrial denial of any intent to participate in a tax evasion scheme. These assertions were also the basis of a motion for a new

**2.** Brief of Appellant Erb at 26.

trial in the district court, which Judge Brieant denied.[3]

■ Taking these contentions in order, the claim of irrelevance is completely without merit. Whether Skillern was Erb's nominee for holding 30,000 shares of Xprint stock and whether Erb knowingly and wilfully misrepresented such ownership to the SEC and the NASD were vital factual issues. Skillern did testify that he was only Erb's nominee, but the taped conversations also bore directly on the relationship between the two and the reasons for it. Erb concedes that Skillern's several references to 20,000 shares of Xprint, coupled with Erb's apparent agreement, supported the Government's theory that Erb knew that Skillern only owned 20,000 out of the 50,000 Xprint shares attributed to him in the prospectus. But, appellant argues, the judge erred in not excluding the remainder of the conversations. We do not agree. The entire conversation in each instance showed that Erb's use of Skillern was part of an overall pattern of conduct and similar acts. The cryptic references to other schemes were not so inflammatory that the likelihood of prejudice outweighed the probative value of the conversation. *United States v. Papadakis*, 510 F.2d 287, 294–95 (2d Cir.), cert. denied, 421 U.S. 950, 95 S.Ct. 1682, 44 L.Ed.2d 104 (1975); *United States v. Williams*, 470 F.2d 915 (2d Cir. 1972).

■ Similarly, the prosecutor's comment in summation that in their discussions Erb and Skillern were "trying to cheat on taxes" did. not deny Erb a fair trial. The trial judge immediately instructed the jury to "disregard the argument made."[4] This sufficiently limited the effect of what even appellant refers to as a "one-liner."[5] The · judge's comment also effectively disposes of the *Brady* claim. If possible tax evasion was sufficiently irrelevant to rebuke the prosecutor for mentioning it, Skillern's alleged denial of the charge was equally so.

*Motion for new trial based upon alleged suppression of evidence*

Erb also argues that the district court improperly denied a hearing on his contention that the Government suppressed evidence favorable to him. The Government claimed that appellant had attended a meeting in May 1969 in the office of another investor, Conrad Schmitt. The meeting was important because the evidence showed that on that occasion Paul DeCoster, Xprint's attorney, gave specific advice that Van Aken's or Erb's ownership of Xprint shares would violate the excess compensation rules. At trial, accomplice Van Aken placed Erb at the meeting, and the obviously more credible DeCoster and Earl Deimund, president of Xprint, corroborated this testimony. DeCoster said that "I believe that Mr. Erb was present, although I cannot swear to that." He amended this a moment later to say that "[m]y best recollection, Your Honor, is that he was present, but I cannot swear to it with a certainty that I have as to other people." Deimund testified that:

> So we held a meeting in Mr. Schmitt's office and Mr. DeCoster and myself told Mr. Schmitt and Mr. Van Aken, Mr. Erb, that the original concept of them owning stock would not be feasible and that if we were to do anything with Baerwald and DeBoer they could not own any of the stock themselves.

In summation, both sides argued as to whether Erb was at this meeting. Erb's counsel stressed the paucity of credible evidence on the issue and the prosecutor emphasized that Van Aken's suspect testimony and DeCoster's less than complete assurance were buttressed by Deimund's testimony.

In the district court, Erb moved for a new trial on the grounds of newly discovered evidence and violation by the Govern-

---

3. Memorandum opinion, Dkt. No. 74 Crim. 818 (Feb. 10, 1976).

4. Ladies and gentlemen of the jury, nobody is on trial here for trying to cheat on their taxes. Confine your consideration of this case to the specific open charges in the indictment, and disregard the argument made.

5. Brief of Appellant Erb at 28.

ment of its obligation under *Brady v. Maryland, supra*. Erb asserted that before trial the Government knew that Deimund had always believed it was unlikely ("30% probable") that Erb was at the May meeting and that Schmitt had stated to a prosecutor that he never met with Erb about Xprint. The motion was supported by affidavits of Deimund and Schmitt and accompanied by Erb's affidavit denying his presence at the meeting and his diary showing no reference to such a meeting. In a memorandum opinion,[6] Judge Brieant denied the motion without a hearing. In this court, appellant presses the claim under *Brady*, asserting that at the very least he was entitled to an evidentiary hearing.

■ We do not agree. Assuming the facts to be as Erb alleged,[7] there was no "suppression" of evidence within the meaning of *Brady*. Erb was "on notice of the basic facts which could have produced . . . alleged exculpatory testimony." *United States v. Tramunti*, 500 F.2d 1334, 1349–50 (2d Cir.), cert. denied, 419 U.S. 1079, 95 S.Ct. 667, 42 L.Ed.2d 673 (1974). Erb obviously knew whether or not he was present at the meeting. He also knew that Schmitt was a potential witness, whose testimony Erb could have procured but did not. Deimund did testify as a government witness and could have been closely cross-examined as to prior statements and his recollection of the meeting, but counsel chose not to do so. Finally, we agree with the district judge that neither Schmitt's nor Deimund's alleged statement "could have been developed so as to have avoided a conviction." Erb's presence at the meeting was evidence only of his motive for making the false statement regarding ownership of Xprint stock. But, as Judge Brieant pointed out:

> [T]he criminal acts here charged do not involve the violation of a rule of the NASD. The acts here charged stem from the knowing and wilfull making of false

statements in registration statements and prospectuses filed with the SEC, and the use of the mails to accomplish a fraud. If knowingly and wilfully done, it is irrelevant whether the false statements were made to avert detection by the NASD or for any other purpose, or no purpose. Proof as to the May 12th meeting bore upon the defendant's motive and his knowledge of the law. Ignorance of the law would have been no excuse for its violation. *United States v. International Minerals & Chemical Corp.*, 402 U.S. 558, 91 S.Ct. 1697, 29 L.Ed.2d 178 (1971). If Erb had never been informed of the existence of the NASD rules, which we doubt, since he was a partner in a firm of underwriters, he would still be guilty of these charges if he knowingly and wilfully made these false statements.

Under the circumstances, the "omitted evidence" does not justify a new trial. See *United States v. Agurs*, —— U.S. ——, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

Erb also argues that the trial judge committed error in charging the jury regarding allowable inferences from the failure of Donald Sedgwick to testify. At trial, Van Aken testified that Sedgwick was his nominee. When interviewed before trial by defense counsel, however, Sedgwick apparently had denied that he was merely a nominee and had said "he considered himself to be the owner of the securities." Nevertheless, neither defendant called Sedgwick to testify, although he was available. The Government also did not call Sedgwick as a witness. In summation, DeBoer's counsel argued that the Government's failure to call Sedgwick suggested that he would not corroborate Van Aken, the Government's chief witness. Erb made no such argument. Neither Erb nor DeBoer requested a charge regarding the failure to call Sedgwick.

Judge Brieant charged as follows:

> Now, there is no duty on the part of the government to call in other or addi-

**6.** See note 3 supra.

**7.** In the district court, the Government denied having the information attributed to it by Deimund or Schmitt.

tional witnesses whose testimony would merely be cumulative. You are to decide this case on the evidence which is before you or upon the absence of evidence, but not upon evidence which might have been brought before you. Specifically, the government had no duty to call Donald Sedgwick as a witness. As I explained to you earlier, defendants have no duty to call any witnesses or bring any evidence. However, Donald Sedgwick is equally available to both sides, and could be subpoenaed by the government or by any defendant if either of them thought they should do so and, accordingly, no inference follows adverse to anyone from the failure to call him as a witness and no such inference adverse to any side in this litigation follows from a failure to bring in testimony which the jury would regard as merely cumulative.

After the charge, DeBoer's counsel took exception to the judge's instruction to the jury

that they could not draw any inference in the government's failure to call him [Sedgwick] because he was merely cumulative.

Asserting that Sedgwick would have contradicted Van Aken as to the alleged nominee status, counsel objected that Sedgwick was not a "cumulative" witness. The following interchange then occurred.

The Court: He's cumulative in that he was there at the same time and place and participated in the same conversations that other witnesses testified to. His version can be different and he can still be cumulative.

Mr. Naftalis [Counsel for DeBoer]: Except it seems to me my understanding of the law on uncalled witnesses by the government is that it is the jury's function to make a judgment whether or not he is cumulative or not.

The Court: I told them that, that you find—cumulative is the word I used. I

decline to modify my instruction as to cumulative witnesses. . . .[8]

Erb argues in this court that the judge erred in charging that Sedgwick was a "cumulative" witness from whose absence the jury could draw no inference against the Government. Erb also contends that the judge was mistaken in telling the jury that no inference could be drawn because Sedgwick was equally available to both sides.

■ Turning to the latter objection first, Erb is correct that the weight of authority in this circuit and "[t]he more logical view is that the failure to produce [a witness equally available to both sides] is *open* to an inference *against both parties*." Wigmore, On Evidence § 288 (3d ed. 1940) (emphasis in original); *United States v. Dixon*, 536 F.2d 1388, 1394 (2d Cir. 1976); *United States v. Crisona*, 416 F.2d 107, 118 (2d Cir. 1969); *United States v. Llamas*, 280 F.2d 392 (2d Cir. 1960); *United States v. Beekman*, 155 F.2d 580, 584 (2d Cir. 1946); *United States v. Cotter*, 60 F.2d 689, 692 (2d Cir. 1932). Cf. *United States v. Brown*, 511 F.2d 920, 925 (2d Cir. 1975); *United States v. Super*, 492 F.2d 319, 323 (2d Cir.), cert. denied, 419 U.S. 876, 95 S.Ct. 139, 42 L.Ed.2d 115 (1974) (no inference when witness is equally unavailable). Yet, there is substantial precedent for the charge Judge Brieant gave that the jury may not draw an inference if the witness is equally available. *United States v. Miranda*, 526 F.2d 1319, 1331 (2d Cir. 1975); *United States v. Dangiolillo*, 340 F.2d 453, 457 (2d Cir. 1965); *United States v. Antonelli Fireworks Co.*, 155 F.2d 631, 638–39 (2d Cir.), cert. denied, 329 U.S. 742, 67 S.Ct. 49, 91 L.Ed. 640 (1946). It would, of course, be easier for district court judges to follow one clear signal from this court. But the differing views in the decisions cited above do not on further examination seem as startling as at first glance. We have been unable to find any opinion in this circuit that reversed a conviction because the judge instructed the

---

8. The judge at this point also attributed the objection to Erb's counsel, thus preserving the point on appeal for both defendants.

jury to draw no inference from the absence of an equally available witness.[9] We believe that this reflects a well deserved reluctance to remove the issue from the sound discretion of the trial judge. Eminent authority suggests caution in developing "elaborate rules of law defining the circumstances when the right [to a missing witness charge] exists." McCormick, On Evidence § 272, at 657–59 (2d ed. 1972). Similarly, if a missing witness charge is given, the jury must be told that it is free to refuse to draw the inference.[10] We adhere to the view that the failure to produce an equally available witness is open to an inference against both parties, but we would be loath indeed to reverse a conviction because the judge told the jury that the inference on the facts before it could not be drawn.

■ With these considerations in mind, we turn to what occurred here. The claim that the judge erred in not following our general rule was not called to his attention and for that reason alone we would decline to consider it. On the issue whether Sedgwick's testimony would be cumulative—the point that was made in the trial court—the judge apparently did regard it as such.[11] But there is more than the usual aura of gamesmanship in the arguments to us on this issue. The defense had interviewed Sedgwick and presumably would have offered his testimony if it could have been helpful. For reasons of their own, defendants chose not to do so, thus avoiding any possible damaging effect from presenting Sedgwick as a witness while at the same time attempting to get the benefit of an inference from his absence. Erb did not think enough of the issue to argue it to the jury or to request an instruction, even after the judge had charged the jury.[12] In addition, Van Aken's testimony was subjected to intense cross-examination and impeachment. This, rather than any possible inference from the absence of a witness, on this record, would have influenced the jury to reject Van Aken's story. Under all the circumstances, we are not disposed to reverse Erb's conviction on this ground.

## III Contentions of DeBoer

We turn now to the arguments of appellant DeBoer. Although charged in each of the 16 counts in the indictment, DeBoer was acquitted on all but one count of aiding and abetting the making of a false statement in the registration statement filed by Xprint with the SEC on August 20, 1969. As indicated, the false statement was that James Lovelett, rather than DeBoer, was the owner of 5,000 shares of Xprint's common stock, 2,500 of which were being registered for sale as part of a proposed public offering of 114,375 shares. DeBoer first argues to us that his conviction on that charge cannot stand because "there was no evidence connecting DeBoer to this specific document."[13] DeBoer, in effect, concedes that there was sufficient evidence to show that Lovelett was DeBoer's nominee and that the registration statement was false in this respect. Rather, the argument is that because DeBoer did not directly participate in the preparation of the August 20 statement, did not sign it and did not file it, he may not be held responsible for it. The argument is without merit. If DeBoer knowingly assisted in the preparation and filing of a false registration statement, he

**9.** Cf. *United States v. Jackson*, 257 F.2d 41 (3d Cir. 1958), in which an alternate basis of reversal was the trial court's refusal to allow counsel to argue that the jury should draw an inference from a missing witness.

**10.** *United States v. Crisona*, 416 F.2d 107, 118 (2d Cir. 1969).

**11.** This view was erroneous. Van Aken's credibility was a sharply disputed issue of fact. If Segwick's testimony contradicted Van Aken's, it was not cumulative. See *Burgess v. United States*, 142 U.S.App.D.C. 198, 440 F.2d 226, 232 (1970); McCormick, supra § 272, at 656–57 n. 26.

**12.** We are aware that the judge gave Erb the procedural benefit of joining in DeBoer's objection after it was made.

**13.** Brief of Appellant DeBoer at 16 (emphasis omitted).

can be held criminally liable for violating 15 U.S.C. § 77x because of 18 U.S.C. § 2.[14]

 Viewing the evidence, as we must, in the light most favorable to the Government, the jury could properly have believed the following: At the April 22, 1969 meeting, Erb and Van Aken offered DeBoer the chance to buy unregistered shares of Xprint at the private offering price of two dollars per share and assured him that Baerwald & DeBoer had already agreed to underwrite a public offering at seven or eight dollars per share. They also told DeBoer that one-half of DeBoer's purchase would be registered and sold in the initial public offering and DeBoer commented that this meant that he "could get more than his investment out the first shot go around." DeBoer was then managing partner of the firm. He explained to the others that, as partners of the underwriter, they could not have stock in their own names without violating the NASD and SEC rules. DeBoer instructed his partners to issue his stock in the name of James Lovelett to avoid disclosing his ownership. DeBoer knew that any public offering would require a registration statement, that it would be false and that the filing was necessary for him to realize a profit. Indeed, in the following month, DeBoer asked Van Aken "where is my stock that I paid $10,000 for?" although he knew the stock was to be in Lovelett's name. All of this was enough to connect DeBoer with the later false filing even though he never saw the document filed, and to support a finding that DeBoer aided and abetted the false filing. See *United States v. Wolfson*, 437 F.2d 862, 878 (2d Cir. 1970); *United States v. Markee*, 425 F.2d 1043 (9th Cir.), cert. denied, 400 U.S. 847, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970); *United States v. Eskow*, 422 F.2d 1060 (2d Cir.), cert. denied, 398 U.S. 959, 90 S.Ct. 2174, 26 L.Ed.2d 544 (1970).[15]

 DeBoer also contends that the applicable five-year statute of limitations, 18 U.S.C. § 3282, barred his conviction. The indictment was filed on August 19, 1974, one day less than five years after the filing of the false registration statement on August 20, 1969. DeBoer argues that because his acts of aiding and abetting occurred a few months before, the statute of limitations bars his conviction. The argument is a novel one, but we do not agree with it. The period of limitation began to run only when the crime was "complete." *Pendergast v. United States*, 317 U.S. 412, 418, 63 S.Ct. 268, 87 L.Ed. 368 (1943); see also *Toussie v. United States*, 397 U.S. 112, 115, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970). The crime that DeBoer aided and abetted was not complete or committed until the false statement was filed. DeBoer's premise is that aiding and abetting is a crime separate from the substantive offense abetted. This is not so. 18 U.S.C. § 2 "does not define a crime; . . . there can be no violation of [Section 2] alone; an indictment under that section must be accompanied by an indictment for a substantive offense." *United States v. Campbell*, 426 F.2d 547, 553 (2d Cir. 1970). Proof that the substantive offense has been committed is necessary to convict an aider and abettor. *United States v. Cades*, 495 F.2d 1166 (3d Cir. 1974). There was no "completed" crime of aiding and abetting prior to August 20, 1969. Therefore, the statute of limitations was not a bar to DeBoer's conviction on this count.

Finally, DeBoer asserts that the judge erred in his charge in three respects. First, in defining aiding and abetting the judge refused to charge that mere knowledge that a crime is being committed is not enough to make one an aider and abettor. The refusal of similar requests caused reversals in

---

**14.** This section provides:

 (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

 (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

**15.** DeBoer relies upon *United States v. Koenig*, 388 F.Supp. 670 (S.D.N.Y.1974), but in that non-jury case the judge found that there were neither material misrepresentations nor a scheme to defraud.

*United States v. Terrell,* 474 F.2d 872, 876 (2d Cir. 1973), and in *United States v. Garguilo,* 310 F.2d 249, 254 (2d Cir. 1962). The panels in those opinions emphasized the closeness of the case and the particular facts before them, which indicated that the particular defendant was arguably a mere spectator. That was not the situation here. Van Aken's testimony, which established DeBoer's participation in the scheme, also placed him as the person who first conceived of the plan to deceive the SEC and NASD. See *United States v. Finkelstein,* 526 F.2d 517, 526 (2d Cir. 1975). Judge Brieant did emphasize, in language not used at least in *Garguilo,* supra, 310 F.2d at 254 n. 1, that the jury had to find that

> a defendant in some way associates himself with the criminal venture, that he participates in it, as in something he wishes to bring about, or needs, that he seeks by his action to make the criminal efforts of the person who is being aided and abetted succeed.

Under the circumstances, we do not believe that the jury was misled or that the failure to charge the requested language justifies our reversing DeBoer's conviction. However, when the issue of aiding and abetting is submitted to the jury, we see no persuasive reason why a judge should not include the thought that mere knowledge that the crime is being committed is not sufficient to convict a defendant. We trust that district court judges in this circuit will do so in the future, although, as this opinion indicates, failure to have done so in the past will not necessarily result in reversal.

DeBoer also claims that the judge erred in charging that the defendant "is presumed to intend the natural and probable or ordinary consequences of his acts." We have strongly criticized a similar instruction in the past as possibly appearing to shift the burden of proof to the defendant. *United States v. Barash,* 365 F.2d 395 (2d Cir. 1966), cert. denied, 396 U.S. 832, 90 S.Ct. 86, 24 L.Ed.2d 82 (1969); see also *United States v. Wilkinson,* 460 F.2d 725 (5th Cir. 1972). We have also expressed surprise at the continued appearance of this language in charges. *United States v. Bertolotti,* 529 F.2d 149, 159 (2d Cir. 1975). Nevertheless, DeBoer made no objection in the trial court. Moreover, as we have just emphasized, the judge did tell the jurors that they had to find that DeBoer associated himself with the false filing as "something he wishes to bring about." Under the circumstances, we decline to find plain error under Fed.R.Crim.P. 52(b). *United States v. Scandifia,* 390 F.2d 244, 248 (2d Cir. 1968), vacated on other grounds, 394 U.S. 310, 89 S.Ct. 1164, 22 L.Ed.2d 297 (1969); *United States v. Umans,* 368 F.2d 725, 728 (2d Cir. 1966), cert. dismissed, 389 U.S. 80, 88 S.Ct. 253, 19 L.Ed.2d 255 (1967).

Finally, DeBoer argues that the court's instruction on the failure to call Donald Sedgwick as a witness was error. We have already discussed this issue in the context of Erb's appeal. Although DeBoer, unlike Erb, did raise this objection with the trial judge and did argue to the jury on Sedgwick's absence, for the reasons previously given, we are not inclined to reverse on this issue.

Accordingly, the judgments of conviction are affirmed.