UNITED STATES of America, Appellee,

v.

Hector TORRES, Bolivar De Leon, Luis Valenzuela and Secundino De Los Santos, Defendants–Appellants.

Nos. 790, 700, 726 and 791, Dockets 87–1410, 87–1413, 87–1423 and 87–1455.

United States Court of Appeals, Second Circuit.

Argued Feb. 24, 1988.

Decided April 29, 1988.

Bert H. Nisonoff, Forest Hills, N.Y., for defendant-appellant Torres.

Robert E. Precht, New York City (The Legal Aid Soc., Federal Defender Services Unit), for defendant-appellant Valenzuela.

Michael S. Jacobs, New York City (McGee & Jacobs, of counsel), for defendant-appellant De Los Santos.

Philip Katowitz, Brooklyn, N.Y., for defendant-appellant De Leon.

Andrew C. McCarthy, New York City, Asst. U.S. Atty., S.D.N.Y. (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., Celia Goldwag Barenholtz, Asst. U.S. Atty., of counsel), for appellee.

Before FEINBERG, Chief Judge, PRATT, Circuit Judge and DORSEY, District Judge.[*]

FEINBERG, Chief Judge:

Hector Torres, Bolivar De Leon, Luis Valenzuela and Secundino De Los Santos appeal from judgments of conviction entered in the United States District Court for the Southern District of New York after a jury trial before Judge John F. Keenan, J., based upon a two-count indictment. Count One charged all four appellants with conspiracy to distribute and possess with intent to distribute cocaine in violation of 21 U.S.C. § 846. Count Two charged Torres, De Leon and Valenzuela with possession of two kilograms of cocaine with intent to distribute in violation of 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(B). Appellants were convicted on all counts. Torres, De Leon and Valenzuela each received a six-year suspended sentence on Count One; nine, seven, and six years imprisonment, respectively, on Count Two; and four years probation. De Los Santos received four years imprisonment on Count One.

On appeal, Torres and De Los Santos claim that the evidence was insufficient to sustain the guilty verdicts against them. De Leon and Valenzuela argue that the district court erred in refusing to give a "missing witness" charge against the government and in suggesting in its charge that the missing witness, a government informant, was equally available to both sides even though the informant refused to be interviewed by defense counsel. Several other claims are also raised. For the reasons given below, we affirm the judgments of conviction.

## I. Background

At trial, the government's evidence consisted primarily of the testimony of Ramon Leader, a confidential government informant, and Arthur Kersey, a Drug Enforcement Administration ("DEA") surveillance agent. These witnesses testified as to the following facts. In April 1987, Leader and another confidential informant, Jacquin Rubio Fornier, met with De Los Santos and discussed purchasing two kilograms of cocaine for $52,000. The next day, the informants met De Los Santos and De Leon at the MiNido Taverna, a bar in northern Manhattan. De Leon indicated that he would introduce the informants to his "brother" who had "the connection" to the cocaine. De Leon left the bar and met Valenzuela up the street at Jon's Car Bar. Several minutes later, De Leon returned with Valenzuela and introduced him to the informants as his "brother." Valenzuela, in the presence of De Leon and De Los Santos, told the informants that they could buy two kilograms of cocaine for $52,000 or could wait a few hours and buy the cocaine from another source for $44,000. Leader indicated that he did not want to wait and would pay the higher price. Valenzuela then left to make a telephone call.

Approximately 30 minutes later, Torres arrived at MiNido and met Valenzuela out front. Torres then entered the bar, but apparently did not approach De Leon. However, De Leon pointed Torres out to Leader as the source of the cocaine. Valenzuela then entered the bar, spoke briefly with Torres, and the two of them then drove away in Torres's car. De Leon, De

---

[*] Honorable Peter C. Dorsey, United States District Judge for the District of Connecticut, sitting by designation.

Los Santos and the two informants went outside and waited for Valenzuela to return. At one point a car pulled up and De Leon, nervous that the man exiting the car was a policeman, indicated that he was going to place a telephone call in order to "stop Mr. Torres from bringing over the dope."

Becoming impatient with the delay, Leader crossed the street to make a telephone call. From this vantage point, he saw Torres park his car and gesture to De Leon. Kersey heard Torres say something in Spanish to De Leon. Leader also saw Valenzuela cross the street with a black brief case about half a block away from Torres and walk towards Jon's Car Bar. De Leon motioned for Leader to follow him and Leader did so. De Leon, De Los Santos and the two informants met Valenzuela in front of Jon's Car Bar while Torres stood in front of MiNido. Leader, De Leon and Valenzuela then went into the bathroom at Jon's Car Bar, where De Leon and Valenzuela opened the brief case and displayed two kilograms of cocaine.

After Leader insisted that the purchase money be delivered at MiNido, De Leon—carrying the cocaine—De Los Santos, Valenzuela and the two informants returned to MiNido. Valenzuela and Torres remained outside, and the others entered the bar. Appellants were arrested shortly thereafter. Torres was searched and agents recovered $3,871 in cash.

## II. Discussion

### A. *Sufficiency of the Evidence.*

Torres and De Los Santos challenge their convictions based upon a claim of insufficiency of the evidence, but the claim merits little discussion. The evidence against them, when viewed in the light most favorable to the government, is more than sufficient to sustain the jury verdicts against them.

Torres argues that there was no direct proof of the content of his conversations with Valenzuela and the destination of their trip together, and stresses that he was never seen with the cocaine. He argues that his mere presence on the street

and his association with Valenzuela, a well known personality in the neighborhood, were insufficient to establish that he was involved in the drug conspiracy. He discounts De Leon's statement indicating that Torres was the prospective supplier, arguing that De Leon might simply have pointed to someone in the crowd, who just happened to be Torres, in order to keep Leader interested in the drug deal.

■ We find these arguments wholly unpersuasive. Torres was not merely present on the scene. Among other things, he was identified by name by De Leon as the supplier of the cocaine; he showed up at the time that the supplier was expected; he left shortly thereafter with Valenzuela in Torres's car; he returned at the same time that Valenzuela returned carrying the cocaine; he gestured to De Leon to follow Valenzuela to Jon's Car Bar; and he watched, arguably as an interested participant and look-out, while the other appellants followed Valenzuela to Jon's Car Bar. A reasonable juror could certainly have concluded that Torres was an active participant in the drug conspiracy.

■ De Los Santos also argues that his mere presence at the scene of the crime is insufficient to make him liable as a co-conspirator. Leader testified, however, that De Los Santos discussed the cocaine sale with him the day before and indicated that he could put Leader in touch with a source of two kilograms of cocaine. The next day, De Los Santos and De Leon met with the informants at MiNido, and although De Leon, and later Valenzuela, apparently took the lead in negotiating the drug sale, De Los Santos was present at each critical stage. The evidence was more than sufficient to sustain the jury's verdict.

### B. *The "Missing Witness" Charge.*

At the start of the trial, the government said it would not call Fornier, the second confidential informant, as a witness, stating that it viewed Fornier's testimony as cumulative. The government also stated that it did not believe that Fornier's identity needed to be revealed, but that he could

be produced if the court so ordered. The government also indicated that it had a tape recording of a conversation between Fornier and De Leon relating to the cocaine transaction that it would not introduce unless Fornier was called as a defense witness.

After Leader's testimony was completed, the government indicated that it was willing to make Fornier available to defense counsel without a court order if they wished to call him as a witness, but revealed that Fornier did not wish to be interviewed prior to his testimony. At appellants' request, the government produced Fornier's DEA payment records and his arrest record—consisting of a 1984 arrest on counterfeiting charges—and disclosed that prosecution of Fornier was deferred as a result of his cooperation.

The district court held an in camera hearing, with all counsel present, in which Fornier confirmed that he did not wish to speak with defense counsel and that the decision was his own. Appellants then made a general request for a "missing witness" charge against the government, arguing that Fornier was unavailable to the defense as a matter of law due to his unwillingness to discuss his testimony prior to taking the stand. Judge Keenan denied the request, noting that Fornier had an "absolute right" to decline to talk to defense counsel prior to testifying and that Fornier was physically available to testify. The judge indicated, however, that defense counsel were free to argue in summation that an inference could be drawn against the government from its failure to call Fornier as a witness, but that the government would then be permitted to respond that the defense could have called Fornier too.

In summation, both De Leon and Valenzuela suggested that the jury should infer that Fornier would have contradicted the government's case, and De Leon added that Fornier should be viewed as a missing "government witness" and not a missing "defense witness." In rebuttal summation, the government responded principally that defendants could have called Fornier if they wanted to, and that neither the government nor defendants had to call a witness whose testimony would be cumulative.

Defendants then renewed their general request for a missing witness charge solely against the government, although they apparently did not offer the judge any precise language. The judge denied this request. Instead, he charged that if a potential witness was equally available to both the government and the defense but was not called by either side, the jury was free to infer that the witness's testimony would have been unfavorable to either side or both, or could draw no inference at all. The charge also indicated that availability meant physical availability. In addition, the judge charged that neither side had a duty to call a witness whose testimony is likely to be merely cumulative and that the jury should remember that a defendant is entitled to rely on the presumption of innocence.

When "a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction" and fails to produce such witnesses, the jury may infer that "the testimony, if produced, would be unfavorable" to that party. *Graves v. United States*, 150 U.S. 118, 121, 14 S.Ct. 40, 41, 37 L.Ed. 1021 (1893); *Burgess v. United States*, 440 F.2d 226, 231 (D.C.Cir.1970). See generally, McCormick, On Evidence § 272, at 804–08 (3d ed. 1984); C. Wright, Federal Practice and Procedure, Criminal § 489, at 740 (2d ed. 1982). However, when a witness is equally available to both sides, "the failure to produce is *open* to an inference *against both parties.*" 2 Wigmore, Evidence § 288, at 208 (Chadbourn rev. 1979) (emphasis in original); *United States v. Erb*, 543 F.2d 438, 444 (2d Cir.), *cert. denied*, 429 U.S. 981, 97 S.Ct. 493, 50 L.Ed.2d 590 (1976). No instruction is necessary where the unpresented testimony would be merely cumulative. *United States v. Tyers*, 487 F.2d 828, 831 (2d Cir. 1973), *cert. denied*, 416 U.S. 971, 94 S.Ct. 1995, 40 L.Ed.2d 560 (1974).

De Leon and Valenzuela argue that Fornier was not equally available to both sides, since, despite Fornier's physical availabili-

ty, his refusal to be interviewed by defense counsel made his testimony practically unavailable to the defense. They argue that a defense lawyer can not risk calling as a witness a person who refuses to be interviewed, the substance of whose testimony remains unknown, especially where the witness has a special relationship to the government.

■ The weight of authority indicates that "in the context of the evidentiary inference to be drawn from a party's failure to call an available witness, the 'availability' of a witness ... depend[s] ... on all the facts and circumstances bearing upon the witness's relation to the parties, rather than merely on physical presence or accessibility." *United States v. Rollins,* 487 F.2d 409, 412 (2d Cir.1973). See, e.g., *United States v. Ariza–Ibarra,* 651 F.2d 2, 15–17 (1st Cir.), *cert. denied,* 454 U.S. 895, 102 S.Ct. 392, 70 L.Ed.2d 209 (1981) (availability may depend upon a witness's predisposition towards a party); *United States v. Mahone,* 537 F.2d 922, 926–27 (7th Cir.), *cert. denied,* 429 U.S. 1025, 97 S.Ct. 646, 50 L.Ed.2d 627 (1976) (local police officer peculiarly within federal government's control); *Burgess,* 440 F.2d at 232 (informer peculiarly within government's control); *United States v. Jackson,* 257 F.2d 41, 43–44 (3d Cir.1958) (government informant not equally available); *United States v. Beekman,* 155 F.2d 580, 584 (2d Cir.1946) (defendant's employee peculiarly within his control). See generally, McCormick, On Evidence § 272 at 805 n. 10; L. Sand, J. Siffert, W. Loughlin & S. Reiss, Modern Federal Jury Instructions, Criminal ¶ 6.04 at 6–16 (1987) (hereafter cited as L. Sand, Modern Federal Jury Instructions). But cf. *United States v. Montoya,* 676 F.2d 428, 431 (10th Cir.), *cert. denied,* 459 U.S. 856, 103 S.Ct. 124, 74 L.Ed.2d 108 (1982) (no charge warranted unless it is "solely within the prosecution's power to call the witness to testify"); *United States v. Anders,* 602 F.2d 823, 825 (8th Cir.1979) (same). Therefore, the district court in this case should have considered the informant's relationship to the government and his refusal to be interviewed by the defense as factors in determining whether the informant was "equal-

ly available" to both sides. Cf. *United States v. Burgos,* 579 F.2d 747, 750 (2d Cir.1978) (assuming sub silentio that an informant who was made available to the defense both for interview and testimony was "equally available"). Nevertheless, we do not believe that the failure of the court to do so constitutes ground for reversal.

It is not clear whether on the facts and circumstances of this case Fornier should be considered to have been "available" to the defense. The consideration of whether Fornier's relationship with the government was such as to render him peculiarly within the government's control is best left to the district court in the first instance. Moreover, courts have been reluctant to find a witness practically unavailable when it appears that the defense has no real interest in calling the witness to the stand, but merely is engaged in a form of gamesmanship in an effort to obtain a missing witness charge. See, e.g., *United States v. Bramble,* 680 F.2d 590, 592 (9th Cir.), *cert. denied,* 459 U.S. 1072, 103 S.Ct. 493, 74 L.Ed.2d 635 (1982). Here, it is true that Fornier refused to be interviewed by the defense, but the defense was also aware that the government intended to introduce a tape-recorded conversation between Fornier and De Leon concerning the cocaine transaction if Fornier was called to the stand. The district court could easily have determined that the existence of the tape-recording and not Fornier's refusal to be interviewed was the real factor discouraging the defense from calling Fornier as a witness. However, a remand to the district court to consider these factors is not necessary.

■ Even assuming that the facts and circumstances of Fornier's relationship with the government were sufficient to render him practically unavailable to the defense, we see no reversible error in Judge Keenan's failure to give a missing witness instruction solely against the government, especially given that the judge permitted defense counsel to argue the inference themselves in summation. Whether a missing witness charge should be given lies

in the sound discretion of the trial court. *United States v. Miranda,* 526 F.2d 1319, 1330–31 (2d Cir.1975), *cert. denied,* 429 U.S. 821, 97 S.Ct. 69, 50 L.Ed.2d 82 (1976); *United States v. Cotter,* 60 F.2d 689, 691–92 (2d Cir.) (Hand, J.), *cert. denied,* 287 U.S. 666, 53 S.Ct. 291, 77 L.Ed. 575 (1932). And, as we noted in *Erb,* "[e]minent authority suggests caution in developing 'elaborate rules of law defining the circumstances when the right [to a missing witness charge] exists.'" 543 F.2d at 445, quoting McCormick, On Evidence § 272, at 657–59 (2d ed. 1972). "Despite the plenitude of cases recognizing the inference, refusal to ... instruct does not often serve as a ground for reversal." McCormick, On Evidence § 272, at 805.

It is noteworthy that in *Erb,* the trial judge actually gave a charge that was contrary to what we there described as "the weight of authority" in this circuit—the judge charged that no adverse inference may be drawn when the missing witness was equally available to both sides. Nevertheless, we affirmed, noting that "we would be loath indeed to reverse a conviction because the judge told the jury that the inference on the facts before it could not be drawn." 543 F.2d at 444–45. The reason was "a well deserved reluctance to remove the issue from the sound discretion of the trial judge," in part because of "the usual aura of gamesmanship" that frequently accompanies requests for a missing witness charge as to which the trial judge will have a surer sense than the appellate court. *Id.* at 445. Thus, rigid rules upon pain of reversal seem inappropriate. Cf. McCormick, On Evidence § 272 at 807 ("a practice which gives a party a right to [a missing witness] instruction is undesirable"). Certainly, where a judge refrains from commenting on the inference to be drawn on the facts before the jury and allows counsel instead to argue the inference, the wisdom of a reversal is even more suspect than it was in *Erb.*

■ Moreover, to succeed on a challenge to a district court's jury instructions, an appellant must show that the requested charge accurately reflected the law and that, viewing the charge actually given as a whole, he was prejudiced. *United States v. Ouimette,* 798 F.2d 47, 49 (2d Cir.1986). In other words, appellant must show that any error in the charge was not simply harmless error. Here, appellants apparently did not submit proposed language for their requested charge, and thus we cannot determine whether the requested charge would have accurately reflected the law. And, as indicated by our discussion above, we believe any error in failing to give the requested charge was harmless.

■ We cannot end our analysis here, however, because Judge Keenan went further than simply denying appellants' request for a missing witness charge against the government and allowing the defense to argue the inference instead. He also permitted the government to rebut the defense summation by arguing that the defense could have called Fornier too, and he slightly mischaracterized the rule on inferences by suggesting that "availability" is defined solely in terms of physical availability. Compare L. Sand, Modern Federal Jury Instructions ¶ 6.04 at 6–20 (model instruction 6–7). We believe, however, that any error in this respect was harmless. Leader provided detailed testimony as to the cocaine transaction and was subjected to extensive cross-examination. A clearer instruction as to permissive inferences to be drawn from Fornier's absence would not have been sufficient to overcome this testimony. Given the substantial evidence of guilt and the proper and likely more influential statements in the judge's charge that no inference need be drawn, that no party need call a witness whose testimony is likely to be merely cumulative and that a defendant is entitled to rely on the presumption of innocence, we cannot say that De Leon and Valenzuela were prejudiced. Cf. *United States v. Johnson,* 467 F.2d 804, 809 (1st Cir.1972), *cert. denied,* 410 U.S. 909, 93 S.Ct. 963, 35 L.Ed.2d 270 (1973) (court's instruction, while a slight misstatement of the rule, was sufficiently neutral as not to vitiate defense counsel's argument in summation as to missing informant).

**1172**

### C. *The Other Claims.*

■ We find no grounds for reversal in the claims of prosecutorial misconduct raised by appellants. De Leon challenges the government's opening remarks in which the prosecutor stated that the enforcement of the drug laws is "an endeavor which takes place in courtrooms like this one throughout our nation every day." Judge Keenan sustained defense counsel's objection to the remark and instructed the prosecutor to "[j]ust tell us what you're going to prove." Nothing further was required. Torres argues that the prosecutor's cross-examination of the owner of Mi-Nido, who testified as a character witness for Valenzuela, was conducted in bad faith. The cross-examination appears to have been conducted within proper limits; moreover, no timely objection was made. Finally, Valenzuela challenges the government's rebuttal summation, arguing that the prosecutor improperly told the jury that Fornier would have corroborated Leader's testimony. Again, it appears that the prosecutor's statements were within proper limits. The prosecutor was responding to the arguments made by the defense. He did not put words in Fornier's mouth, but merely stated that, as Leader had testified, Fornier saw and heard the same things as Leader and the jury could properly conclude that the government did not call Fornier as a witness because he was out working other narcotics cases and his testimony would have been cumulative. See *United States v. Coven*, 662 F.2d 162, 172–73 (2d Cir. 1981), *cert. denied*, 456 U.S. 916, 102 S.Ct. 1771, 72 L.Ed.2d 176 (1982) ("when viewed in the context of the entire summation ... this comment is clearly seen as a suggestion of a permissible inference for the jury to draw rather than a statement of personal knowledge of what [the missing witness] would have said.") Moreover, Valenzuela failed to raise a timely objection and there was certainly no plain error.

■ We also find Torres's claim of ineffective assistance of counsel to be without merit. The claimed errors by Torres's counsel in failing to move to suppress the $3,871 in cash seized from Torres at the time of his arrest and in failing to seek an "interested witness" instruction with respect to Leader's testimony do not rise to the level necessary to overcome the strong presumption that counsel's performance was reasonable under *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

We have considered all of appellants' arguments and find no grounds for reversal. The judgments of conviction are affirmed.