Robert TURLEY, Plaintiff,

v.

NEW YORK CITY POLICE DEPARTMENT and New York City Department of Parks and Recreation, Raymond Kelly, in his official capacity, and Betsy Gotbaum, William F. Dalton, Alexander R. Brash, Michael Fox, Kevin Dougherty, and Raymond Spinella, in their individual and official capacities, Defendants.

No. 93CIV.8748(SAS).

United States District Court, S.D. New York.

Aug. 22, 1997.

---

Robert T. Perry, Brooklyn, NY, for Plaintiff.

Albert Fredericks, Dana Biberman, Gabriel Taussig, Asst. Corp. Counsels, New York City, for Defendants.

*OPINION & ORDER*

SCHEINDLIN, District Judge.

### I. Introduction

Plaintiff, a self-proclaimed street musician, challenged New York City's scheme for regulating the use of amplifiers in public spaces as violative of his rights under the First and Fourteenth Amendments to the United States Constitution and the New York State Constitution. Plaintiff also challenged the Parks Department's permit scheme for the performance of music in New York City parks as violative of his free speech and equal protection rights. In addition, plaintiff asserted that the Police and Parks Departments' seizure of street musicians' instruments, sound amplifiers, and other equipment was an unlawful prior restraint on speech in violation of the First Amendment. Finally, plaintiff challenged the constitutionality of New York City's General Vendor Law, N.Y.C. Admin. Code §§ 20–452, *et seq.,* which provides that vendors of items other than written matter must obtain a vending license prior to selling their goods in a public space.

After a six-day trial, a jury found the defendants ("the City" or "defendants") liable on several grounds. Defendants now move to strike certain special verdict responses. Defendants also move, pursuant to Fed.R.Civ.P. 59, for a new trial on the issue of the reasonableness of the decibel ceiling placed on plaintiff's sound device permits, which the jury found to be unreasonably low.

Plaintiff moves for several forms of relief: (1) for a new trial under Rule 59 on two issues for which the jury did not find liability, namely, whether the current fees for sound device permits exceed the relevant processing cost, and whether defendants Raymond Spinella and Kevin Dougherty are individually liable; (2) to set aside the jury's damage award as unreasonably low; (3) for prejudgment interest; (4) for a permanent injunction pursuant to Fed.R.Civ.P. 65; and (5) to vacate a portion of this Court's March 4, 1996 Order pursuant to Fed.R.Civ.P. 60(b).

### II. Defendants' Motion to Strike

During deliberations, the jury devised and requested the addition of several questions to the special verdict sheet. Not surprisingly, the jury answered each of its own questions in the affirmative. Taken together, these questions constituted a finding that the City had selectively enforced aspects of § 10–108 against plaintiff—namely, a "single event" restriction [1] and the 75 decibel limit. The City now moves to strike the answers to the special verdict questions posed by the jury because a selective enforcement claim was precluded based on the prior dismissal of plaintiff's equal protection claims.

 The Court of Appeals has said that selective enforcement "is lodged in a murky corner of equal protection law in which there are surprisingly few cases. . . ." *LeClair v. Saunders,* 627 F.2d 606, 608 (2d Cir.1980); *LaTrieste Restaurant and Cabaret Inc. v. Village of Port Chester,* 40 F.3d 587, 590 (2d Cir.1994) (citing *LeClair* ). A violation of equal protection based on selective enforcement arises if:

(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.

*Id.* (citing *LeClair,* 627 F.2d at 609–10). Thus a selective enforcement claim is an equal protection claim, rather than a First Amendment claim. *See Sanjour v. E.P.A.,* 56 F.3d 85, 92 n. 9 (D.C.Cir.1995) (citing *LeClair* )(" '[s]elective enforcement' is not . . . a First Amendment cause of action" but an equal protection cause of action).

The City's motion to strike must be granted for several reasons. First, in his Opinion and Order of March 4, 1996, Judge Allen G.

---

1. The "single event" restriction refers to plaintiff's allegation that the Police Department prohibits sound device permit applicants from listing more than one location, time or date on a single sound device permit. The jury found that the Police Department did not have such a policy generally, but rather that it selectively placed this restriction on plaintiff and other musicians like him.

Schwartz granted the City's motion for summary judgment on each of plaintiff's equal protection claims with the exception of his claim involving the Parks Department's permit policy.[2] Therefore, no equal protection claim was pending when the jury found liability on equal protection grounds.

■ Furthermore, the jury received no charge regarding a claim of selective enforcement. Federal Rule of Civil Procedure 49(a) provides that "[t]he court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue." Fed.R.Civ.P. 49(a). Because the jury was not instructed on the elements of the selective enforcement claim, and because no equal protection claim remained in the case, the jury's answers to questions 9a, 10a, 11a, 25a, 26a, 27a, 28a, and 29a are stricken. As a result, the damage award for the "selective enforcement claims" in the amount of $14,630 is vacated.[3]

III. Motions for a New Trial under Rule 59

A. Legal Standard

■ A motion for a new trial under Fed. R.Civ.P. 59 should be granted when "the jury has reached a seriously erroneous result or ... the verdict is a miscarriage of justice." *Song v. Ives Laboratories, Inc.,* 957 F.2d 1041, 1047 (2d Cir.1992) (quoting *Smith v. Lightning Bolt Productions, Inc.,* 861 F.2d 363, 370 (2d Cir.1988)). When a party moves for a new trial on the ground that the jury's verdict is against the weight of the evidence, a court can weigh all of the evidence adduced at trial and "need not view it in the light most favorable to the verdict winner." *Id.*

B. Defendants' Motion—The 75 Decibel Ceiling

■ Pursuant to New York City Administrative Code § 10–108, which authorizes the Police Department to set a maximum volume for sound amplification devices, the Police Department placed a 75 decibel at six feet limit on plaintiff's permits for the Times Square area. The jury found that this 75 decibel limit was unreasonably low. Defendant now challenges that determination as seriously erroneous and contrary to the weight of the evidence.

In support of its motion the City highlights the testimony of its expert who indicated that the average decibel level from ambient sound in the Times Square area was approximately 70 to 71 decibels. *See* Tr. 777–791, 450–52, 467–68. Plaintiff's expert, Alan Fierstein, on the other hand, testified that the ambient sound level often rose to above 80 decibels. Tr. 454. Mr. Fierstein, an acoustical consultant, testified that

> in order for music to be listened to and properly appreciated you have to have a 15 to 20 signal to noise ratio. By that I mean the difference between the sound of the music and the sound of the ambient traffic.

Tr. 455. Thus, even if the average ambient sound level in Times Square does not exceed 71 decibels, the jury could reasonably have concluded that the 75 decibel limit placed on plaintiff's sound device permits was unreasonable. By crediting this expert testimony, the jury could reasonably conclude that plaintiff's music would not be heard in the Times Square area when the difference between the "signal"—his music played at 75 decibels at six feet—and the "noise"—an ambient sound level of 71 decibels—is only 4 decibels.

The City also points to testimony from John Codiglia, Commanding Officer of the Manhattan South Task Force, as support for the reasonableness of the 75 decibel limit. Captain Codiglia testified that the officers of Manhattan South Precinct (of which Times Square is a part) do not charge permit holders with violating the permit ceiling unless the sound produced by the permit holder exceeds the measurement of ambient noise by at least 10 decibels. Tr. 800–10. Therefore, according to Captain Codiglia, if the ambient sound level in Times Square were 70 decibels, the permit holder would not be charged with violating a 75 decibel ceiling in

---

**2.** During the charge conference, plaintiff withdrew this remaining equal protection clause claim. Trial Transcript ("Tr.") 827–28.

**3.** For a detailed description of the damage award, *see* pp. 681–82, *infra.*

his or her permit unless he or she played louder than 80 decibels. The City contends that this practice supports the reasonableness of the 75 decibel ceiling. While the jury could have concluded that this testimony supported a finding that the decibel limit was reasonable, it was not compelled to make such a finding. Its verdict on this issue was not seriously erroneous.

### C. Plaintiff's Motions

#### 1. Current Costs of Sound Device Permits

Plaintiff seeks a partial new trial on the issue of whether the current fee of $45 per day, and $5 per day for each consecutive day within a five day period exceeds the average cost incurred by the Police Department in processing sound device permits. Plaintiff contends that the jury's finding that the current fees do not exceed the processing costs of the Police Department is both against the weight of the evidence and irreconcilably inconsistent with the jury's finding that the former fee structure of $29 per day was excessive.

■ "The Seventh Amendment right to a jury trial precludes entry of a judgment based on an inconsistent jury verdict that thereby disregards any material jury finding." *Finnegan v. Fountain*, 915 F.2d 817, 820 (2d Cir.1990). Plaintiff argues that the jury's finding that a cost of $29 per day under the former fee structure exceeded the processing costs for sound device permits is irreconcilably inconsistent with the jury's finding that a $45 per day fee does not exceed relevant processing costs. Defendant responds that the jury could have reasonably concluded that while the current fee structure as a whole is appropriate ($45 for the first day, $5 for consecutive days up to five days), the former fee structure failed to account for the savings inherent in the issuance of multi-day permits, and that on that basis, the jury could conclude that the current fee structure does not exceed processing costs.

■ The jury's findings on this point are ambiguous at best. The verdict sheet questions about the current fee structure asked the jury to decide whether the fee structure as a whole—i.e. including the $5 for subsequent days—exceeded the Police Department's processing costs.[4] These questions assumed that the permit applicant acquired a weekly permit. However, the jury was not asked whether the $45 per day permit for a single-day permit exceeded the cost of processing a single permit. A potential inconsistency exists between the jury's finding that $29 per day is excessive, while $45 for a single day is not. Defendants are therefore correct that the jury may have considered the prior fee structure to be unreasonable because of its failure to take economies of scale into account; however, the jury's responses on the verdict sheet do not dictate that conclusion. The jury should have also been asked to consider, as an initial matter, whether the initial cost of $45 for a single day exceeded processing costs. Plaintiff is therefore entitled to a new trial on the issue of the constitutionality of the current fee structure for sound device permits.

#### 2. Individual Liability

Plaintiff also seeks a new trial on the issue of whether defendants Raymond Spinella and Kevin Dougherty are individually liable. At trial, plaintiff contended that defendant Spinella intentionally or recklessly interfered with his exercise of his First Amendment rights in connection with the establishment and enforcement of the 75 decibel limit. Plaintiff also contended that defendant

---

4. Questions 5 and 6 of the verdict sheet read as follows:

 5. Has plaintiff proved by a preponderance of the evidence that the current fee of $45.00 per day for a sound device permit and $5.00 per day for each additional day within a five consecutive day period in the same location exceeded the average cost incurred by the Police Department in the processing of a sound device permit application from a musician such as plaintiff?

 6. Has plaintiff proved by a preponderance of the evidence that the aggregate cost of $16,250 for multiple permits for a single applicant (based on $65.00 for a five-day permit, 5 permits per week, 50 weeks per year) exceeds the aggregate cost incurred by the Police Department in the processing of multiple permits? The jury answered "No" to both questions.

Dougherty intentionally or recklessly interfered with plaintiff's First Amendment rights in connection with Mid–Town South Precinct's denial of his applications for sound permits. Plaintiff now argues that a new trial is warranted because this Court erred in failing to instruct the jury that it could draw an adverse inference from Spinella's and Dougherty's failure to testify.[5]

Although neither Spinella nor Dougherty testified, Spinella's deposition testimony was introduced at trial. During deliberations, the jury posed several questions to the Court about the right of a witness not to testify and the ability of the opposing party to require the witness to testify. At a sidebar conference with counsel, plaintiff's counsel conceded that an uncalled witness charge was not appropriate with regard to Spinella because plaintiff had introduced his testimony at trial. Defense counsel requested that the Court charge the jury that an adverse inference could be drawn against either side for failing to call Dougherty and any other uncalled City witnesses, because those witnesses were equally available to both parties. Because I concluded that plaintiff could have deposed Dougherty prior to trial or subpoenaed him, he was equally available to both parties. The jury was so charged.

First, plaintiff waived his right to an uncalled or missing witness charge by neglecting to object to the Court's failure to give that charge prior to the jury's deliberations. Rule 51 provides, in relevant part,

> No party may assign as error the giving *or the failure to give an instruction* unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.

Fed.R.Civ.P. 51 (emphasis added). Before jury deliberations commenced, plaintiff neither proposed that such a charge be given, nor objected to the Court's failure to include one. Although plaintiff contends that the Court "did not even propose a 'missing wit-

ness' charge until after jury deliberations had begun," Plaintiff's Reply Memorandum at 2, this did not relieve plaintiff of his obligation to timely object under Rule 51.

Second, the "equally available" charge was not error. "Whether a missing witness charge should be given lies in the sound discretion of the trial court." *United States v. Torres*, 845 F.2d 1165, 1170–71 (2d Cir.1988) (citations omitted). Moreover, the refusal to give such a charge is not often ground for reversal. *Id.* at 1171. A trial court may give such an instruction when " 'a party has it peculiarly within [its] power to produce witnesses whose testimony would elucidate the transaction.' " *Sagendorf–Teal v. County of Rensselaer*, 100 F.3d 270, 275 (2d Cir.1996) (quoting *Torres*, 845 F.2d at 1169). Availability depends on "all the facts and circumstances bearing on the relationship of the witness to the parties," and not just on physical availability.

Plaintiff made no attempt to secure Dougherty's testimony before trial, as he did with Spinella, nor did he subpoena him as a witness. While it is true that Dougherty works for the Police Department and might have colored his testimony to favor the City, that did not prevent plaintiff from deposing him. Plaintiff cannot claim that he was without fault in Dougherty's failure to testify. Moreover, plaintiff was not seriously prejudiced by the Court's instruction because it permitted the jury to draw an adverse inference against Dougherty if it so chose. Plaintiff's motion for a partial new trial on this issue is therefore denied.

### 3. Damages

Plaintiff also seeks a new trial on damages. He contends that the jury's award of $37,233 is unreasonably low, and clearly against the weight of the evidence. Defendant contends that the jury's verdict is entirely consistent with the evidence at trial.

There is no need to address the issue of whether the jury's verdict was unreasonably

---

5. Plaintiff also contends that the jury's failure to find defendant Spinella individually liable is inconsistent with its finding that the 75 decibel limit was selectively enforced against plaintiff. However, as noted above in Section II, no equal

protection claim remained at the time of trial. As a result, there was no legal basis for a finding of selective enforcement. Those findings have therefore been stricken, and cannot provide a basis for an assertion of an inconsistent verdict.

low because plaintiff is entitled to a new trial on damages for a different reason—namely, that the damages verdict was tainted by the jury's responses to questions it posed concerning selective enforcement. The jury awarded plaintiff $551 for the damages he sustained as a result of the former $29 per day fee for a sound device permit; $7,366 for Mid–Town South's denial of plaintiff's applications for sound device permits for the Times Square area; $1,000 dollars for the unreasonably low 75 decibel ceiling; $7,366 for Mid–Town South and North Precincts' past acts of prohibiting the solicitation of donations; $6,210 for the Parks Department's ban on the playing of amplified music in Central Park by street musicians; and $100 for the Parks Department's refusal to allow plaintiff to perform in Duffy Square Park.

In addition to the above awards, the jury awarded plaintiff $14,530 for what it found to be the Police Department's policy of selectively enforcing the 75 decibel limit against plaintiff. The jury also awarded plaintiff $100 for what it found to be the Police Department's policy of selectively placing a "single event" restriction on plaintiff and others like him.

▬ As noted above in Section II, no equal protection claim remained at the time of trial, and the jury was therefore not instructed on selective enforcement. The jury awarded its highest damage award—over $14,000—for its finding that the 75 decibel limit was selectively enforced against plaintiff, yet awarded only $1,000 for its finding that the decibel limit was unreasonably low in violation of the First Amendment. If the jury had not been under the false impression that damages for "selective enforcement" were available, it may have awarded a higher amount for the First Amendment violation. It is also possible that the jury may have awarded higher damages on plaintiff's other First Amendment claims, but did not do so based on the belief that such damages would be cumulative of the damages awarded for selective enforcement. On the other hand, the jury may have considered the First Amendment damages in isolation, and awarded the amount for those claims it considered

just. Because the jury's verdict was tainted by the impermissible damages awarded for selective enforcement, plaintiff is entitled to a new trial on damages.

IV. Prejudgment Interest

Plaintiff also seeks prejudgment interest on his damages award. Although the amount of damages upon which prejudgment interest would be based is not available at this time, plaintiff is entitled to prejudgment interest after a new trial on damages.

▬ Whether to award prejudgment interest lies within the broad discretion of the trial court. See Mendez v. Teachers Ins. & Annuity Ass'n, 982 F.2d 783, 790 (2d Cir.1992). Among the factors a court should consider are:

> (i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court.

*Wickham Contracting Co. v. Local 3, Int'l Brotherhood of Electrical Workers,* 955 F.2d 831, 834 (2d Cir.1992). Prejudgment interest is intended to be compensatory. *United States v. Seaboard Sur. Co.,* 817 F.2d 956, 966 (2d Cir.1987).

Plaintiffs are often awarded prejudgment interest in cases of employment discrimination where back pay has been awarded. *See, e.g., Saulpaugh v. Monroe Community Hosp.,* 4 F.3d 134, 144–145 (2d Cir.1993). Here, the jury awarded plaintiff damages in very precise amounts—*e.g.* $7,366 both for the denial of permits for Times Square and for the ban on solicitation of donations—which strongly indicates that it intended to compensate plaintiff for lost profits. For a street musician such as plaintiff, those lost profits are in effect his "back pay," which was lost by defendants' actions. In such circumstances, "in order to be fully compensated, [a plaintiff is] entitled to recover for the loss of the use of [his or her] damage award." *Zicherman v. Korean Air Lines Co.,* 814 F.Supp. 605, 608 (S.D.N.Y.1993), *aff'd,* 43 F.3d 18 (2d Cir.1994), *aff'd in part,*

*rev'd in part,* 516 U.S. 217, 116 S.Ct. 629, 133 L.Ed.2d 596 (1996).

Moreover, an award of prejudgment interest serves the remedial purposes of § 1983. "The goal of § 1983 is to deter public officials from violating citizens' federal rights and to compensate victims of such official wrongdoing." *Weaver v. Brenner,* 40 F.3d 527, 532 (2d Cir.1994). Here, the jury found that the defendants violated plaintiff's First Amendment rights on several grounds. In addition to those grounds, the jury made further findings, now stricken, that plaintiff was singled out for such constitutionally impermissible treatment. While this cannot be considered for purposes of a damages award, I find as an equitable consideration that the evidence supported such a finding.

■■■ Plaintiff is therefore entitled to prejudgment interest after a new trial on damages. Although plaintiff suggests that this Court apply the 9% rate of statutory interest authorized under N.Y.C.P.L.R. § 5004, I decline to do so. Plaintiff will instead receive a rate of interest consistent with the interest paid on short term treasury bills as specified in 28 U.S.C. § 1961, which is the most commonly used basis for prejudgment interest in this Circuit. *See, e.g., Ingersoll Milling Mach. Co. v. M/V Bodena,* 829 F.2d 293 (2d Cir.1987); *Softel, Inc. v. Dragon Med. and Scientific Communications, Ltd.,* 891 F.Supp. 935, 944 (S.D.N.Y.1995), *aff'd in part, vacated and remanded in part,* 118 F.3d 955, 1997 WL 374511 (2d Cir.1997).

## V. Permanent Injunction

■■■ A permanent injunction may only be issued after a valid adjudication of the merits of the action. *See Amoco Prod. Co. v. Village of Gambell,* 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 1404 n. 12, 94 L.Ed.2d 542 (1987) (to justify permanent injunctive relief, plaintiff must show actual success on merits). In addition, to obtain a permanent injunction, "a party must show the absence of an adequate remedy at law and irreparable harm if the relief is not granted." *New York State Nat. Org. for Women v. Terry,* 886 F.2d 1339, 1362 (2d Cir.1989). "The equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met

where there is no showing of any real or immediate threat .that a plaintiff will .-be wronged again." *City of Los Angeles v. Lyons,* 461 U.S. 95, 111, 103 S.Ct. 1660, 1670, 75 L.Ed.2d 675 (1983); *see also Farmland Dairies v. McGuire,* 789 F.Supp. 1243, 1250 (S.D.N.Y.1992) ("To obtain injunctive relief based on past injury, the plaintiff must show a real and immediate threat that the injury will be continued or repeated.").

■■■ Moreover, "[f]ollowing a jury verdict, a [c]ourt making findings of fact with respect to equitable claims is bound by the jury's findings." *Chase Manhattan Bank, N.A. v. T & N plc,* 1996 WL 603934 at * 1 (S.D.N.Y. Oct.22, 1996). A court is collaterally estopped from making a determination with respect to equitable relief that is contrary to the jury's findings. *See Wade v. Orange Co. Sheriff's Office,* 844 F.2d 951, 954 (2d Cir.1988) (defendant is entitled to have favorable jury decision operate as an estoppel).

Plaintiff requests a permanent injunction: 1) barring Mid–Town North and Mid–Town South Police Precincts from placing a 75 decibel ceiling on plaintiff's sound device permits; 2) requiring Mid–Town North and South to issue plaintiff monthly multi-site permits at a cost not exceeding $45; 3) requiring the Parks Department to issue plaintiff special event permits for amplified music at Cherry Hill in Central Park each Saturday and Sunday; and 4) requiring the Parks Department to issue plaintiff special event permits to perform in Duffy Square Park at least two days per week.

Plaintiff's requests for a permanent injunction are denied. As to requests 2, 3, and 4, a permanent injunction is not supported by the jury's findings. Turning first to plaintiff's request for monthly permits, the jury was not asked to determine whether the current five-day limit on sound device permits was unconstitutional, nor was it asked to determine whether the City was obligated to provide monthly permits to plaintiff. In fact, the jury found that the current permit structure was constitutional, at least with respect to cost. Yet plaintiff requests a *monthly* permit at no more than $45, the current cost

of a single-day permit. The record does not support the requested relief.

Second, the jury was neither asked to consider nor did it find that plaintiff had a right to play on Cherry Hill itself, but rather found that plaintiff had a right to play amplified music in Central Park. The Parks Department currently allows amplified musical performances at several Central Park locations, including the Naumberg Bandshell. *See* Declaration of Thomas G. Rozinski, counsel to the New York City Department of Parks and Recreation, dated July 23, 1997, at ¶¶ 3, 8. Thus a permanent injunction is not warranted because plaintiff is permitted to play amplified music in Central Park.

Plaintiff contends that other amplified musicians and performers are allowed to perform in close proximity to Cherry Hill, while he is denied access to the same locations. *See* Affidavit of Robert Turley ("Turley Aff."), dated July 8, 1997, at ¶¶ 15–16. Once again, this is a claim of selective enforcement. As discussed above, all of plaintiff's equal protection claims were dismissed or abandoned. If in the future the Parks Department refuses permits to plaintiff while authorizing them for other performers, it runs the risk of a new lawsuit which carefully pleads a claim of selective enforcement. However, in the current posture of this case, the request for a permanent injunction must be denied.

Next, plaintiff requests that the City permit him to play in Duffy Square at least two days per week. Plaintiff has not alleged, however, that he has either applied for or been denied permits to play in Duffy Square Park. In fact, he states that because the Parks Department has refused to issue permits to him for Cherry Hill, he "did not bother re-applying for a special event permit to perform in Duffy Square Park, believing that my application would have been futile ...." Turley Aff. at ¶ 17. While plaintiff's sentiment is understandable, it does not provide a basis for a permanent injunction because plaintiff has not shown that he is likely to be refused permits to play in Duffy Square Park. Should plaintiff be denied such

permits in the future, he can always apply for injunctive relief at that time.

■ Finally, plaintiff seeks an injunction prohibiting the City from imposing the 75 decibel limit upon him. The City admits that it has continued to enforce this limit on plaintiff's permits for Times Square pending resolution of the post-trial motions currently before the Court. As the City's motion for a new trial on the reasonableness of the 75 decibel limit has been denied, the City is now obligated to raise the decibel limit on plaintiff's permits for Times Square. The City has in fact conceded that "[s]hould the Court deny [its] application for a new trial and enter a judgment in accordance with the jury's verdict, the Police Department will promptly be advised to modify [the 75] decibel limit." Defendants' Memorandum of Law in Opposition at 8. On the basis of that representation, plaintiff does not need a permanent injunction at this time. However, should the City fail to comply with this Court's judgment, plaintiff may renew his application for a permanent injunction.

## VI. Rule 60(b)

Plaintiff also seeks relief from the March 4, 1996 Opinion and Order insofar as it granted summary judgment to defendants on plaintiff's claims that the New York City General Vendor Law, Admin. Code §§ 20–452, *et seq.*, on its face and as applied, abridged plaintiff's freedom of speech and denied him equal protection of the laws. Plaintiff also seeks summary judgment on those claims, as well as a new trial on the damages plaintiff sustained by the enforcement of the General Vendor Law against him.

■ Rule 60(b) provides in relevant part:

On motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order, or proceeding for ... mistake, inadvertence, surprise, or excusable neglect .... The motion shall be made within a reasonable time, and ... not more than one year after the judgment, order, or proceeding was entered or

taken.[6]

Fed.R.Civ.P. 60(b). Motions to vacate under Rule 60(b) "are addressed to the sound discretion of the district court and are generally granted only upon a showing of exceptional circumstances." *Mendell ex rel. Viacom, Inc. v. Gollust,* 909 F.2d 724, 731 (2d Cir. 1990), *aff'd,* 501 U.S. 115, 111 S.Ct. 2173, 115 L.Ed.2d 109 (1991). What is a "reasonable time" depends upon the facts of each case, and includes "the length and circumstances of the delay and the possibility of prejudice to the opposing party." *Montco, Inc. v. Barr (In re Emergency Beacon Corp.),* 666 F.2d 754, 760 (2d Cir.1981).

Plaintiff contends, and defendants essentially concede, that summary judgment on plaintiff's General Vendor Law claims was granted based on a district court opinion reversed by the Court of Appeals. That decision, *Bery v. City of New York,* 97 F.3d 689 (2d Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 2408, 138 L.Ed.2d 174 (1997), found that the General Vendor Law violated the First and Fourteenth Amendment rights of visual artists who sought to sell their artwork on New York City streets without a requisite vending license. *See Bery,* 97 F.3d at 694–98. The Administrative Code limits the number of such licenses to be issued to 853, but exempts persons selling written materials. *See* Admin. Code §§ 20–453, 20–459, 20–473. The Court of Appeals in *Bery* found that because of the limited number of licenses available and the lengthy waiting list for licenses, the *Bery* plaintiffs were effectively prohibited from selling their art in public spaces anywhere in New York City. *Bery,* 97 F.3d at 697–98. The court concluded that the General Vendor Law was not a reasonable "time, place, and manner" restriction and violated the First Amendment. *Id.* Because of the licensing exception for vendors of written material, the court found that the vending law deprived the *Bery* plaintiffs of equal protection as well. *Id.* at 698. Plaintiff contends that Judge Schwartz's ruling, based on the trial court decision in *Bery,* now constitutes a "mistake" for purposes of Rule 60(b).

The Court of Appeals has held that a change in decisional law as the result of a reversal by a higher court can be considered a "mistake" for which Rule 60(b) provides a remedy. *See Tarkington v. United States Lines Co.,* 222 F.2d 358 (2d Cir.1955); *see also Schildhaus v. Moe,* 335 F.2d 529, 530–31 (2d Cir.1964) (Friendly, C.J.). However, such relief is only available under very special circumstances, and in particular, if the time for appeal has not yet run. *See Schildhaus,* 335 F.2d at 531; *see also International Controls Corp. v. Vesco,* 556 F.2d 665, 669 (2d Cir.1977). In *Tarkington,* eleven days after the entry of a judgment based on Circuit law, the Supreme Court released a decision that effectively reversed the Circuit. The plaintiff moved for relief under Rule 60(b) within ten days after the decision. Commenting on the *Tarkington* decision, Judge Friendly remarked:

> Under such circumstances there is indeed good sense in permitting the trial court to correct its own error and, if it refuses, in allowing a timely appeal from the refusal; no good purpose is served by requiring the parties to appeal to a higher court, often requiring remand for further trial court proceedings, when the trial court is equally able to correct its decision in light of the new authority on application made within the time permitted for appeal.

*Schildhaus,* 335 F.2d at 531.

The circumstances of this case warrant relief under Rule 60(b). First, defendants are in no way prejudiced by vacating the March 4 Order and the granting of a new trial on damages because a new trial has been granted on several other issues. Defendants concede as much in their motion papers. *See* Memorandum of Law in Opposition to [Plaintiff's] Rule 60(b) Motion ("Defs.' Mem.") at 5 ("unless the Court orders a new trial on any of the issues previously tried, plaintiff's request for a new trial on the vending issue should be denied"). Defendants also recognize that "the reasoning in *Bery* is equally applicable to plaintiff's sale of

---

6. This one year period is presumed to run from the formal entry of final judgment. 12 MOORE'S FEDERAL PRACTICE ¶ 60.65[2][c]; *see also Carter v.* *Beverly Hills Savings and Loan Ass'n,* 884 F.2d 1186, 1189 (9th Cir.1989).

recordings of his music." Defs.' Mem. at 3. Thus, while Rule 60(b) is not intended to be a substitute for direct appeal, *see Schildhaus,* 335 F.2d at 531, it makes no sense to go through an appeal, a remand, and a *third* new trial in this matter, rather than trying this issue with the other issues set for retrial.

 Moreover, plaintiff's 60(b) motion is not untimely. The time for appeal has certainly not run because no final judgment has been entered on any of plaintiff's claims. Moreover, the Supreme Court denied certiorari in *Bery* on June 3, 1997. Finally, administrative issues delayed the reassignment of this matter, and it remained unassigned from March 1997 to May 1997, when it was assigned to my docket.

I conclude that plaintiff has made his Rule 60(b) motion in a timely. manner, and that he is entitled to relief under that rule. In light of the Court of Appeals decision in *Bery,* plaintiff is entitled to summary judgment on his General Vendor Law claims and a new trial on damages. Plaintiff's request for a permanent injunction on this issue is denied as plaintiff has not demonstrated that he will be harmed absent an injunctive relief.

## VII. Conclusion

Defendants' motion to strike special verdict responses 9a, 10a, 11a, 25a, 26a, 27a, 28a, and 29a is granted. Plaintiff's motion to vacate the March 4, 1996 Order with respect to the General Vendor Law is granted, and plaintiff is granted summary judgment on his General Vendor Law claims based on the reasoning in *Bery v. City of New York,* 97 F.3d 689 (2d Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 2408, 138 L.Ed.2d 174 (1997). Plaintiff's motion for a permanent injunction is denied, and his motion for prejudgment interest is granted.

Defendants' motion for a new trial on the reasonableness of the 75 decibel limit is denied. Plaintiff's motions for a new trial are granted in part and denied in part. A new trial will be held on the issue of damages, including damages for past violations of plaintiff's free speech and equal protection rights with respect to the General Vendor

law, as well as on the issue of whether the current fee structure for sound device permits is reasonable. A conference is scheduled for September 2, 1997 at 10:30 a.m.

SO ORDERED.