Robert TURLEY, Plaintiff–Appellee–
Cross–Appellant,

v.

POLICE DEPARTMENT OF the CITY
OF NEW YORK; New York City De-
partment of Parks and Recreation; Ray-
mond W. Kelly, in his official capacity;
Betsy Gotbaum; William F. Dalton; Al-
exander R. Brash; Michael P. Fox; Kev-
in Dougherty; and Raymond Spinella, in
their individual and official capacities,
Defendants–Appellants–Cross–Appellees.

Docket Nos. 98–7114(L), 98–7176(XAP)
and 98–7526(CON).

United States Court of Appeals,
Second Circuit.

Argued Oct. 19, 1998.

Decided Jan. 25, 1999.

Robert T. Perry, Brooklyn, New York, for Plaintiff–Appellee–Cross–Appellant.

Elizabeth I. Freedman, Michael D. Hess, Corporation Counsel of the City of New York, (Francis F. Caputo, Dana Biberman, on the brief), for Defendants–Appellants–Cross–Appellees.

Before: OAKES and JOHN M. WALKER, JR., Circuit Judges, and COTE, District Judge.*

JOHN M. WALKER, JR., Circuit Judge:

This is an appeal from (1) the judgment of the United States District Court for the Southern District of New York (Shira A. Scheindlin, *District Judge*) granting a new trial, following a jury verdict, on plaintiff's claim that the City's $45 single day fee for a sound amplification permit is unreasonably high; (2) from the prior judgment of the United States District Court for the Southern District of New York (Allen G. Schwartz, *District Judge*) that New York City's sound permit scheme does not impermissibly exempt government-sponsored musicians and (3) does not impermissibly delegate unbridled discretion to government officials to set maximum sound levels; and (4) from the judgment of the district court (Allen G. Schwartz, *District Judge*) finding that the City may confiscate the amplifiers of permittees accused of violating the terms of their permits or playing without a permit. *See Turley v. New York City Police Dep't*, No. 93 Civ. 8748 (AGS), 1996 WL 93726 (S.D.N.Y. Mar. 05, 1996) (Schwartz, J.) (*"Turley I"*); *Turley v. New York City Police Dep't*, 988 F.Supp. 675 (S.D.N.Y.1997) (Scheindlin, J.) (*"Turley II"*); *Turley v. New York City Police Dep't*, 988 F.Supp. 667 (S.D.N.Y.1997) (Scheindlin, J.) (*"Turley III"*).

Plaintiff-appellant-cross-appellee Turley appeals from the district court judgments regarding the constitutionality of the City's sound permitting scheme; defendants-appellees-cross-appellants (hereinafter "the City") appeal from the judgment of the district court granting a new trial on the reasonableness of the City's $45 single day fee and subsequent findings of the district court following a bench trial. We hold that the district court abused its discretion in granting a new trial, and reinstate the jury's verdict regarding the reasonableness of the City's permit fee. We affirm the district court's judgments with respect to the constitutionality of the permit scheme and the confiscation policy.

## BACKGROUND

The following facts are not in dispute. Turley is a street musician who earns his living playing music in the public spaces of New York City. Turley plays an unusual instrument called a TrebleBass, which is a combined electric bass and guitar. Like other electric musical instruments, the TrebleBass must be played with a sound amplifier

---

* The Honorable Denise Cote, of the United States District Court for the Southern District of New York, sitting by designation.

in order to be heard. Turley has produced his own album, entitled "RobOn–Bass: Straight from the Street," which he sells to the audiences that gather to hear his live performances. Turley's ambition is to be discovered by a producer, sign a recording contract, and play formal concerts. In the meantime, to make his current living, Turley performs on the streets of New York. He seeks to do so at least five days a week, fifty weeks a year, and uses as many as five separate locations on a given day. In the past, Turley has performed primarily on traffic islands and street-corners in the Times Square area, although he has attempted unsuccessfully to obtain permits to perform in Central Park.

For many years, street musicians in New York City could not perform lawfully in the City's public spaces without a license. But in June 1970, the City eliminated the license requirement for musicians who, unlike Turley, perform without a sound amplifier. Musicians performing without an amplifier remain subject to time, place, and manner regulations that prohibit unreasonable noise and obstruction of pedestrian traffic. *See* N.Y.C.Admin.Code. § 24–218; Penal Law § 240.20(5).

Street musicians who use sound amplification, however, must first obtain a permit from the police department precinct for the area in which they intend to perform. N.Y.C.Admin.Code § 10–108(e). The permit application must be filed five days before the anticipated performance, to allow precinct personnel time to check that no two musicians are scheduled to perform in the same spot and that there are no other conflicts.

At the time that Turley filed this lawsuit, the City charged $29 per day, every day, for a sound amplification permit. The central claim of Turley's suit was that this fee was unreasonably high and failed to take into account the economies of scale of processing permits for repeat applicants like Turley. Then, starting in 1996, the City shifted to a fee schedule that distinguished between the first and subsequent days of a permit: under the new fee schedule, the City charged $45 for the first day of a permit and $5 for each day thereafter up to a total of four additional

days. Thus, whereas a five day permit would cost $145 under the old schedule, it costs only $65 under the new one, a significant advantage to full-time musicians like Turley. Nevertheless, Turley continued to maintain that the fee was too high and that it insufficiently distinguished between repeating and one-time applicants. Turley also challenged the City's policy of exempting from the fee requirement musicians who had obtained government sponsorship through programs such as the Metropolitan Transportation Authority's "Music Under New York" program.

Each sound amplification permit issued by a police precinct must specify the maximum sound volume which may be employed in the use of the amplifier. N.Y.C.Admin.Code. § 10–108(f). Since 1993, the City has routinely assigned a 75 decibel limit at six feet away from the source to performers in the Times Square area. The City maintains that, according to its measurements, a musician should be audible at that volume above the ambient noise of the area. To ensure compliance with the terms of its sound permits, the City deploys police officers to patrol performance sites and record volume levels. If a musician is found playing without a permit, or at a volume level in excess of that provided on his permit, the police may issue a warning or arrest the musician and confiscate his amplifier pending resolution of the charges.

Turley filed this suit on December 20, 1993, challenging the fee, volume, and confiscation aspects of the City's sound permitting scheme, as well as other aspects of the scheme that are not before us on this appeal. The case was initially assigned to Judge Schwartz, who, following a motion by the City for summary judgment, ruled *inter alia,* that the permitting scheme did not (1) violate Turley's right to the equal protection of the laws in exempting government-sponsored musicians from the permit fee; (2) impermissibly delegate unbridled discretion to officials to determine maximum sound levels; or (3) violate Turley's First Amendment rights in authorizing confiscation of amplifiers prior to the adjudication of alleged violations of the permit terms. The case was subsequently reassigned to Judge Scheindlin, who presided

over a jury trial on plaintiff's remaining claims.

The jury that deliberated on Turley's claims was asked to respond to over 40 questions submitted on a special interrogatory form. Among those questions were several concerning the reasonableness of the City's former and subsequent fee schedules, including the following two questions which the court had adopted verbatim from the questions proposed by plaintiff. Special Interrogatory Number 1 asked:

> Has the plaintiff proved by a preponderance of the evidence that the fee of $29 per day for a sound device permit which was in effect between 1990 and June 1996 exceeded the average cost incurred by the Police Department in the processing of a single sound device permit application from a musician such as the plaintiff?

The jury answered "yes." Special Interrogatory Number 5 asked:

> Has the plaintiff proved by a preponderance of the evidence that the current fee of $45 per day for a sound device permit and $5 per day for each additional day within a five-consecutive-day period in the same location exceeded the average cost incurred by the Police Department in the processing of a sound device permit application from a musician such as plaintiff?

The jury answered "no."

Following the jury's verdict, Turley moved for a new trial on the ground that the jury's answers to questions 1 and 5 were inconsistent. The district court granted the motion. *See Turley II,* 988 F.Supp. at 680. Pursuant to the parties' stipulation, the district court then presided over a bench trial to relitigate the reasonableness of the City's current fee schedule. The district court ruled that the City had failed to meet its burden of establishing the reasonableness of the $45 fee for a single day permit. *See Turley III,* 988 F.Supp. at 674.

This appeal by the City regarding Judge Scheindlin's grant of a new trial and subsequent findings, and the cross-appeal by Turley regarding Judge Schwartz's findings on the City's summary judgment motion, ensued.

## DISCUSSION

### I. *The Grant of a New Trial*

■ We review the district court's grant of a new trial *de novo. See Auwood v. Harry Brandt Booking Office, Inc.,* 850 F.2d 884, 891 (2d Cir.1988) (conducting independent review of potentially inconsistent jury verdict). When confronted with a potentially inconsistent jury verdict, the court must "adopt a view of the case, if there is one, that resolves any seeming inconsistency." *Id.* (quoting *Fiacco v. City of Rensselaer,* 783 F.2d 319, 325 (2d Cir.1986)). Before a court may set aside a special verdict as inconsistent and remand the case for a new trial, it must make every attempt "to reconcile the jury's findings, by exegesis if necessary ." *Gallick v. Baltimore & Ohio R.R.,* 372 U.S. 108, 119, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963). *See also LeBlanc–Sternberg v. Fletcher,* 67 F.3d 412, 427–28 (2d Cir.1995); *Brooks v. Brattleboro Mem. Hosp.,* 958 F.2d 525, 529 (2d Cir.1992).

■ The district court determined that there was "[a] potential inconsistency ... between the jury's finding that $29 per day is excessive, while $45 for a single day is not." *Turley II,* 988 F.Supp. at 680. We agree that there was a "potential" inconsistency between the jury's findings, but do not agree with the district court's judgment that a new trial was warranted on this basis. Although the jury's findings that $29 for one day was excessive but that $45 for one day was not, when viewed in isolation, appear inconsistent, when viewed in the context of the trial and the jury charge, they are reconcilable. *Cf. Crockett v. Long Island R.R.,* 65 F.3d 274, 278 (2d Cir.1995) (no way to reconcile jury's award of damages for past medical expenses and pain and suffering and future medical expenses, but not for future pain and suffering); *Finnegan v. Fountain,* 915 F.2d 817, 820 (2d Cir.1990) (no way to reconcile jury's finding that police officer acted both in "good faith" and "maliciously or wantonly or oppressively").

Plaintiff's counsel tried the case primarily on the theory that the City's old fee schedule of $29 per day, *every day,* by failing to take

account of economies of scale in processing permits for regular applicants like Turley, was unreasonable. Plaintiff never requested that the district court submit a question to the jury specifically on the reasonableness of a $45 fee for one day, where an applicant did not apply for a five-day permit. Accordingly, it was entirely consistent for the jury to answer the questions submitted exactly as it did: finding that $29 per day for five days (at a total of $145) was unreasonable, but that $65 for the five day period was not. Although we agree with the district court's observation that it would have been better if the jury had been asked "to consider, as an initial matter, whether the initial cost of $45 for a single day exceeded processing costs," *Turley II*, 988 F.Supp. at 680, Turley's failure to request such a charge, and the district court's failure to give one, did not necessitate the award of a new trial. *See Brooks*, 958 F.2d at 529 (new trial warranted only where "the jury's answers cannot be harmonized rationally"). We note as well that plaintiff himself submitted the two questions in the special interrogatory form that created the potential inconsistency with which we are concerned.

Because we find that the district court erred in awarding a new trial and thus uphold the jury's verdict that the $45 single day and $65 five day fee was reasonable, we need not reach the parties' arguments with respect to the district court's subsequent findings regarding the reasonableness of the $45 fee.

## II. *The Exemption of Government–Sponsored Musicians from the Permit Fee*

 We turn next to the three issues decided by Judge Schwartz in his grant of partial summary judgment to defendants. First, we affirm the district court's determination that the City's exemption of government-sponsored musicians from the normal permit fee does not violate the Equal Protection Clause of the Fourteenth Amendment. *See Turley I*, 1996 WL 93726, at *4–5. Plaintiff has never alleged that the City chooses which musicians it sponsors on the basis of the content of their speech. And, as Turley acknowledges, the "[g]overnment can, without violating the Constitution, selectively

fund a program to encourage certain activities." *Rust v. Sullivan*, 500 U.S. 173, 193, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991). This prerogative is limited only by the principle that the government may not selectively fund speech on the basis of its content. *See id.* at 194, 111 S.Ct. 1759; *see also Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 835, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995). Because there is no allegation of content-based discrimination, we find that there is no merit to this claim.

## III. *The Delegation of Authority to Officials to Set Maximum Volume Limits*

 Second, we affirm the district court's determination that Section 10–108(h) does not confer impermissible discretion on police officers to determine the maximum volume for sound permits. At trial, the jury found that the City's volume limit of 75 decibels at six feet from the source—the limit that had previously been applied to Turley—was unreasonably low. *See Turley II*, 988 F.Supp. at 679. On appeal, therefore, Turley does not challenge any particular volume limit as applied to him, but rather the scheme that permits police officers to use their discretion to determine appropriate volume levels.

As a threshold matter, the City contends that Turley lacks standing to bring this facial challenge to the scheme. The district court denied the facial challenge on the merits and did not address Turley's standing. We find that we also need not reach the issue of Turley's standing, since the challenge fails on the merits. *See Ward v. Rock Against Racism*, 491 U.S. 781, 794, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989).

In *Ward v. Rock Against Racism*, the Court considered City guidelines governing sound amplification in Central Park that stated as their goal "[t]o provide the best sound for all events ... [and][t]o insure appropriate sound quality balanced with respect for nearby residential neighbors and the ... quiet zone of Sheep Meadow...." *Ward*, 491 U.S. at 788 n. 2, 109 S.Ct. 2746. Like Turley, the plaintiffs in *Ward* challenged the guidelines on the grounds that "there is nothing in the language of the guideline[s] to prevent city officials from selecting wholly inadequate

sound equipment or technicians, or even from varying the volume and quality of sound based on the message being conveyed by the performers." *Id.* at 793, 109 S.Ct. 2746.

The Supreme Court held that the aforementioned standards were sufficient to withstand the plaintiffs' facial challenge, noting that "[w]hile these standards are undoubtedly flexible, and the officials implementing them will exercise considerable discretion, perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Id.* at 794, 109 S.Ct. 2746. *Cf. City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 769–70, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988) (holding that statute that permitted mayor to deny a license for reasons including "such other terms and conditions deemed necessary and reasonable by the Mayor" inadequately bounded official discretion); *Saia v. People of New York*, 334 U.S. 558, 68 S.Ct. 1148, 92 L.Ed. 1574 (1948) (statute that prohibited loudspeakers or other amplification devices to the extent that they could "be heard to the annoyance or inconvenience of travelers upon any street or public places or of persons in neighboring premises" except where permission had been obtained by the Chief of Police conferred unconstitutionally broad discretion).

The *Ward* Court noted further that, even if the language of the guidelines were not sufficiently precise to survive the facial challenge, the city's interpretation of the guidelines provided further narrowing of the officials' discretion, such that "[a]ny inadequacy on the face of the guideline would have been more than remedied by the city's narrowing construction." *Ward*, 491 U.S. at 796, 109 S.Ct. 2746. With respect to sound volume, the district court in *Ward* had found that the city had "ma[de] it a practice to confer with the sponsor if any questions of excessive sound ar[o]se, before taking corrective action," and had adopted the goal of ensuring that "the sound amplification [is] sufficient to reach all listeners within the defined concertground." *Rock Against Racism v. Ward*, 658 F.Supp. 1346, 1352 (S.D.N.Y.1987).

Given this precedent, we find that the guidelines articulated in Section 10–108(f), combined with the policies adopted by the City for setting maximum volume limits, pass constitutional muster. Section 10–108(f) provides that the police shall set a maximum volume on permits:

> as may be necessary, for the purpose of securing the health, safety, comfort, convenience and peaceful enjoyment by the people of their right to use the public streets, parks or places for street, park or other public purposes, protecting the health, welfare and safety of the inhabitants of the city, and securing the peace, quiet and comfort of the neighboring inhabitants.

In addition, the City produced evidence that its Department of Environmental Protection had developed a uniform standard for setting maximum sound volumes. According to Jerome Ross, the Director of the division that developed the standard, the City set maximum sound levels at the level that would enable a street preacher to be heard from a distance of six feet away. For Times Square, for example, the City determined that the ambient noise in the area was at approximately 70 decibels. The maximum sound level for those using amplifiers in Times Square was therefore set at 75 decibels from six feet away, a volume that the City determined would enable the speaker to be heard by those within six feet without necessarily reaching those further away.

Turley contends that the standard outlined by Ross is "replete with arbitrariness, lacking even documentation and proposing to limit the audible distance to just six feet from the speaker." There is no constitutional requirement, however, that the guidelines adopted by the City, to the extent they provide guidance in addition to that provided by the statute, be written down or otherwise "documented." *See Ward*, 491 U.S. at 795–96, 109 S.Ct. 2746 (noting that district court had made findings as to City's policies, but citing no written form of such policies).

To the extent that Turley challenges the City's determination that 75 decibels at six feet is a reasonable volume limit, his challenge is appropriately characterized as an "as applied" challenge. Turley has already prevailed on this challenge at trial, having convinced a jury that 75 decibels at six feet away

in Times Square was unreasonably low. That the City got the appropriate sound limit wrong, however, is not proof that its method is arbitrary and unconstitutional. If the City gets it wrong again when it establishes a new standard, then Turley's remedy is to bring another as applied challenge to the new standard.

IV. *The Confiscation of Sound Amplifiers*

■ Third and finally, we turn to the district court's determination that the City's policy of confiscating the sound amplifiers of musicians charged with violating the terms of their permits is constitutional. The district court found that Turley's sound amplifier could be confiscated without procedural protections pending the resolution of criminal charges for using a sound device without a permit because the amplifier was a mere "instrumentality" of speech rather than speech itself. *Turley I*, 1996 WL 93726, at * 13.

Relying on *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), the City contends that this confiscation is permissible under the well-established doctrine that a law enforcement officer, upon charging an individual with a crime, may seize and hold as evidence instrumentalities of the offense without going through an adversary hearing. The City disputes the application of the First Amendment exception to this doctrine, *see, e.g., Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 63, 109 S.Ct. 916, 103 L.Ed.2d 34 (1989), which arises largely in obscenity cases, for the reasons expressed by the district court—namely, that the amplifier, as contrasted with Turley's music, is not speech.

Although we are concerned about the silencing of performers while their amplifiers are in police custody—and assume, without deciding, that in some circumstances a sound amplifier and similar equipment could be considered speech as opposed to its instrumentality—we affirm the district court's ruling. In supplemental briefing on this issue, the City explained that the confiscation policy is necessary

so that the Police Department can retain temporary custody of the amplification de-

vice and preserve it from being destroyed, for purposes of establishing and demonstrating, *inter alia,* the capacity of the device to achieve the particular decibel level alleged, and produce sound at the volume charged in the summons. Retaining custody of the sound equipment is necessary to refute any asserted defense by the violator that the device cannot be operated at the sound level alleged in the accusatory instrument.

We find this rationale for the confiscation policy sufficient to withstand constitutional scrutiny. As the Supreme Court noted in *Heller v. New York*, 413 U.S. 483, 492, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973), "seizing films to destroy them or to block their distribution or exhibition is a very different matter from seizing a single copy of a film for the *bona fide* purpose of preserving it as evidence in a criminal proceeding ." *Accord Fort Wayne Books, Inc.,* 489 U.S. at 63, 109 S.Ct. 916. There is no evidence that the City seizes amplifiers for the purpose of silencing musicians; rather, the evidence is that amplifiers are seized incident to arrest, generally following unheeded warnings, as evidence of violations of Admin.Code § 10.108. Moreover, the amplifiers are returned to their owners following the disposition of charges. Appellant does not here challenge the procedures established for such return. Accordingly, we find that the City's confiscation policy is constitutional.

## CONCLUSION

The judgment of the district court granting a new trial is reversed and the jury's verdict with respect to the reasonableness of the City's sound permit fees is hereby reinstated. The judgments of the district court granting summary judgment to defendants on plaintiff's equal protection claim based on the exemption of City-sponsored musicians from the permit fee, his claim based on the delegation of authority to officials to set maximum volume limits, and his claim regarding the City's confiscation policy, are affirmed.

Plaintiff shall bear costs.