Donna DiPIRRO and Dennis DiPirro, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 96–CV–94H.

United States District Court, W.D. New York.

July 6, 1999.

David J. Sleight, Lustig & Brown, LLP, Buffalo, NY, for Donna DiPirro and Dennis DiPirro.

Mary Pat Fleming, U.S. Attorney's Office, Buffalo, NY, for U.S. and U.S. Postal Service.

## DECISION AND ORDER

HECKMAN, United States Magistrate Judge.

On February 26, 1999, this court issued its findings of fact and conclusions of law after a non-jury trial in this case brought under the Federal Tort Claims Act. *DiPirro v. United States*, 43 F.Supp.2d 327 (W.D.N.Y.1999). The court found defendant liable to plaintiffs in the total amount of $54,000.00 for damages arising out of an August 10, 1994 accident involving a postal vehicle and a car driven by plaintiff Donna DiPirro. Judgment was entered on March 2, 1999. Plaintiffs have now filed a motion pursuant to Rule 59 of the Federal Rules of Civil Procedure for amend-

ment of the judgment, and defendant has filed a motion pursuant to Rule 60 for relief from the judgment. For the following reasons, plaintiffs' motion is denied, and defendant's motion is granted.

## BACKGROUND

In the February 26, 1999 decision and order, the court summarized its findings of fact and conclusions of law as follows:

Based on a preponderance of the credible evidence presented at trial, I find that the injuries complained of by Mrs. DiPirro were caused, precipitated or aggravated by a combination of trauma from the impact of the August 10, 1994 accident, her predisposition to carpal tunnel or rotator cuff injury established by her several preexisting medical conditions, and possible latent residual effects of other recent trauma to her ribs, neck and back. I also find that Mrs. DiPirro's medical condition caused her to be totally disabled from returning to her past work as manager of Pizza DiPirro from August 10, 1994 through January 5, 1998, but not thereafter. I find that defendant is liable for Mrs. DiPirro's economic loss beyond [New York's no-fault limit of] $50,000.00, and for plaintiffs' non-economic loss including Mrs. DiPirro's damages for past pain and suffering and Mr. DiPirro's damages for loss of support, consortium and services, in the total amount of $54,-000.00.

*DiPirro v. United States, supra,* 43 F.Supp.2d at 330–331. The court found that Mrs. DiPirro was entitled to recover for past pain and suffering due to the injuries proximately caused by defendant's negligence in the amount of $34,000.00. This recovery reflected a reduction by (1) an amount commensurate with the amount of past pain and suffering reasonably attributable to Mrs. DiPirro's preexisting ailments and previous traumatic injuries, and (2) an amount commensurate with the amount of past pain and suffering that might have been avoided by Mrs. DiPirro if she had undergone the rotator cuff surgery recommended by her treating physicians, or by otherwise making a reasonable effort to minimize her damages. *See Id.* at 344–345. The court also found

that Mrs. DiPirro was entitled to a recovery of lost wages (over and above New York's $50,000.00 no-fault limit) in the amount of $18,000.00. *Id.* at 344. The court made its findings of fact and conclusions of law "in light of the adverse inference drawn from plaintiffs' unexplained failure to call Dr. Michael Geraci, the treating physician who conducted electrodiagnostic nerve studies on Mrs. DiPirro's hands, as a trial witness." *Id.* at 345.

Plaintiffs move to amend the judgment on the following grounds:

1. The court committed legal error when it reduced Mrs. DiPirro's recovery of damages for past pain and suffering by an amount attributable to her preexisting ailments and previous injuries.

2. Defendant waived the affirmative defense of failure to mitigate damages.

3. The court should not have drawn an adverse inference from plaintiffs' failure to call Dr. Geraci as a witness.

Defendant moves pursuant to Rule 60 for relief from the judgment reducing the plaintiffs' recovery of damages for Mrs. DiPirro's lost wages. According to defendant, Mrs. DiPirro gave testimony in Erie County Court on December 8, 1998 in a criminal trial involving an attempted robbery at the plaintiffs' pizzeria. Mrs. DiPirro's testimony indicates that she was working at the pizzeria on November 14, 1997, the date of the attempted robbery, and that she recognized the robber because he had been a regular customer for at least six weeks prior to that date. Defendant claims that this sworn testimony directly contradicts the testimony given by Mrs. DiPirro in this case that she was totally disabled from working at the pizzeria from August 10, 1994 to January, 1998.

## DISCUSSION

### I. Plaintiffs' Motion.

■ Rule 59 provides that, in an action tried without a jury, the court "may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new

judgment." FED.R.CIV.P. 59(a). Under this rule, the court may alter or amend the judgment entered after a non-jury trial for (1) manifest errors of law, (2) manifest errors of fact, or (3) newly discovered evidence. *Geshwind v. Garrick*, 738 F.Supp. 792, 793 (S.D.N.Y.1990), *aff'd*, 927 F.2d 594 (2d Cir.), *cert. denied*, 502 U.S. 811, 112 S.Ct. 58, 116 L.Ed.2d 34 (1991); *Agola v. Hagner*, 678 F.Supp. 988, 991 (E.D.N.Y.1987).

Plaintiffs claim that the court committed an error of law when it reduced the award of damages for pain and suffering because of Mrs. DiPirro's preexisting medical conditions. Plaintiffs rely on *Maurer v. United States*, 668 F.2d 98 (2d Cir.1981), a maritime personal injury case in which the plaintiff alleged that he sustained a disabling back injury as a result of an accident on a ship. The defendant in *Maurer* contended that the plaintiff's disability was caused by a preexisting degenerative back condition, and by injuries suffered in a prior accident. After a non-jury trial, the district court found the defendant liable, but attributed only 25% of the damages to the accident, and then further reduced the recovery by 75% based on contributory negligence. *Maurer v. United States, supra*, 668 F.2d at 99.

The Second Circuit affirmed the district court's determination of the percentage reduction for contributory negligence, but vacated the judgment and remanded the case for further findings with respect to the determination that the accident was only a 25% cause of the plaintiff's disability. The circuit court stated the applicable rule as follows:

> It is a settled principle of tort law that when a defendant's wrongful act causes injury, he is fully liable for the resulting damage even though the injured plaintiff had a preexisting condition that made the consequences of the wrongful act more severe than they would have been for a normal victim. The defendant takes the plaintiff as he finds him. A plaintiff's recovery for damages caused by a defendant's wrongful act may not be proportionately reduced because of a preexisting weakness or susceptibility to injury such as an osteoarthritic condition or a weakness caused by a previous injury.

However, there are two exceptions to the general rule. First, when a plaintiff is incapacitated or disabled prior to an accident, the defendant is liable only for the additional harm or aggravation that he caused. Second, when a plaintiff has a preexisting condition that would inevitably worsen, a defendant causing subsequent injury is entitled to have the plaintiff's damages discounted to reflect the proportion of damages that would have been suffered even in the absence of the subsequent injury, but the burden of proof in such cases is upon the defendant to prove the extent of the damages that the preexisting condition would inevitably have caused.

*Maurer, supra* at 99–100 (citing *Evans v. S.J. Groves & Sons Co.*, 315 F.2d 335, 347–348 (2d Cir.1963); *United States Fidelity & Guaranty Co. v. United States*, 152 F.2d 46, 49 (2d Cir.1945); *The Jefferson Myers*, 45 F.2d 162 (2d Cir.1930); *Buchalski v. Universal Marine Corp.*, 393 F.Supp. 246, 248 (W.D.Wash.1975)).

In this case, the court's findings of fact and conclusions of law were made in accordance with the second *Maurer* exception—*i.e.*, the court found that the defendant was entitled to have the damage award for Mrs. DiPirro's past pain and suffering discounted to reflect the proportion of damages that would have been suffered even in the absence of the August 10, 1994 accident. After a detailed review of the evidence presented at trial, the court found:

> [T]he preponderance of the medical evidence establishes that Mrs. DiPirro had several medical problems before the August 10, 1994 accident. For example, Mrs. DiPirro had a long history of insulin-dependent diabetes mellitus, hyperthyroidism, high blood pressure, arthritis and weight control problems. According to the testimony of virtually all of the physicians who either treated Mrs. DiPirro or conducted independent medical examinations, every one of these conditions can be an underlying or contributing cause of carpal tunnel syndrome. Mrs. DiPirro also had a history of at least three traumatic injuries to her back, neck and rib cages bilaterally

in the twenty months prior to the August 10, 1994 accident. Based on this undisputed medical evidence, it is reasonable to conclude that her preexisting medical conditions contributed to the severity of the symptoms that she developed subsequent to the accident.

*DiPirro v. United States, supra,* 43 F.Supp.2d at 327, 338–339. The court found that Mrs. DiPirro was entitled to recover for past pain and suffering due to the injuries proximately caused by defendant's negligence, and that her recovery should be reduced by an amount commensurate with the amount of past pain and suffering reasonably attributable to her preexisting ailments and previous traumatic injuries. *Id.* at 344–345.

Plaintiffs have not demonstrated how these findings are inconsistent with the rules stated in the *Maurer* case. Clearly, in finding that the preponderance of the evidence supported a reduction of the award by an amount commensurate with the amount of past pain and suffering attributable to Mrs. DiPirro's preexisting condition, the court also found that defendant met its burden of proving the extent of the damages that the preexisting condition would inevitably have caused.

In addition, in ruling that Mrs. DiPirro's predisposition to harm based on her preexisting medical condition was a factor to be considered in assessing the reasonableness of the award of damages for past pain and suffering, this court relied on the Second Circuit's holding in *Steinhauser v. Hertz Corp.,* 421 F.2d 1169 (2d Cir.1970). *See DiPirro v. United States, supra,* 43 F.Supp.2d at 344. The principles set forth in both *Steinhauser* and *Maurer* were in turn derived from the *Evans v. S.J. Groves* case, in which the Second Circuit held that if the defendant "succeeds in establishing that the plaintiff's pre-existing condition was bound to worsen ..., [then] an appropriate discount should be made for the damages that would have been suffered even in the absence of the defendant's negligence." *Evans v. S.J. Groves & Sons Co., supra,* 315 F.2d at 348; *see Steinhauser v. Hertz Corp., supra,* 421 F.2d at 1173–1174; *Maurer v. United States, supra,* 668 F.2d at 100.

Accordingly, plaintiffs have failed to show that the court committed a manifest error of law when it reduced the award for Mrs. DiPirro's past pain and suffering by an amount commensurate with the amount of past pain and suffering reasonably attributable to her preexisting ailments and previous traumatic injuries.

 Plaintiffs also contend that the court should not have reduced Mrs. DiPirro's recovery for past pain and suffering based on her failure to mitigate damages because defendant waived the mitigation defense by failing to plead it. The general rule is that an affirmative defense, such as failure to mitigate damages, is waived if not pleaded. *See, e.g., Travellers International, A.G. v. Trans World Airlines, Inc.,* 41 F.3d 1570, 1580 (2d Cir.1994); *Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 n. 2 (2d Cir.1988); see also 5 Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1278, at 477 (2d Ed.1990). However, when evidence related to an unpleaded defense is introduced at trial without objection, the court is required under FED. R.CIV.P. 15(b) to treat the pleadings as if they actually had raised the issue. *George A. Fuller Co. v. Alexander & Reed, Esqs.,* 760 F.Supp. 381, 385 (S.D.N.Y.1991); Wright & Miller, *supra* at 495–502; *see also Hillburn by Hillburn v. Maher,* 795 F.2d 252, 264 (2d Cir.1986) (motion to amend pleadings to conform to evidence must be granted when issues have been tried with express or implied consent of parties), *cert. denied,* 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 859 (1987). This mandatory requirement furthers "[t]he well-known objective of the rule that cases should be decided on resolution of the actual dispute between the parties, rather than on the paper pleadings filed at the inception of suit...." *Securities and Exchange Commission v. Rapp,* 304 F.2d 786, 790 (2d Cir. 1962); *see also Ostano Commerzanstalt v. Telewide Systems, Inc.,* 880 F.2d 642, 646 (2d Cir.1989).

In this case, evidence pertaining to Mrs. DiPirro's failure to have surgery to repair the partial rotator cuff tear in her right shoulder was presented during plaintiffs' direct case (*see* Item 55, pp. 660–70). Therefore, the court is required to treat the issue of failure to mitigate damages as if it had been raised in the pleadings.

Accordingly, plaintiffs are not entitled to an amendment of the judgment on the ground that defendant waived the affirmative defense of failure to mitigate damages.

■ Plaintiffs also claim that the court erred by drawing an adverse inference from the failure to call Dr. Geraci as a trial witness. Dr. Geraci treated Mrs. DiPirro between approximately October 1994 and September 1995, and conducted two electro-diagnostic nerve studies on Mrs. DiPirro's hands and wrists to test for carpal tunnel syndrome. He was listed by plaintiffs as a witness to testify at trial, but was not called. Plaintiffs contend that the decision not to call Dr. Geraci was a tactical one based on the cumulative nature of his antic-ipated testimony and plaintiffs' limited re-sources. Plaintiffs also contend that Dr. Geraci was not peculiarly within their pow-er to produce as a witness at trial.

The standards for applying the "unfavora-ble inference" rule are set forth by the Sec-ond Circuit in *United States v. Torres,* 845 F.2d 1165 (2d Cir.1988) (cited in *DiPirro v. United States, supra,* 43 F.Supp.2d at 345), as follows:

> When "a party has it peculiarly within his power to produce witnesses whose testimo-ny would elucidate the transaction" and fails to produce such witnesses, the jury may infer that "the testimony, if produced, would be unfavorable" to that party. However, when a witness is equally avail-able to both sides, "the failure to produce is open to an inference against both par-ties." ... The weight of authority indi-cates that "in the context of the evidentia-ry inference to be drawn from a party's failure to call an available witness, the 'availability' of a witness ... depend[s] ... on all the facts and circumstances bearing upon the witness's relation to the parties, rather than merely on physical presence or accessibility."

*United States v. Torres, supra,* 845 F.2d at 1169, 1170 (citing *Graves v. United States,* 150 U.S. 118, 121, 14 S.Ct. 40, 37 L.Ed. 1021 (1893); *United States v. Erb,* 543 F.2d 438, 444 (2d Cir.), *cert. denied,* 429 U.S. 981, 97 S.Ct. 493, 50 L.Ed.2d 590 (1976); *Burgess v. United States,* 440 F.2d 226, 231 (D.C.Cir. 1970); McCormick, ON EVIDENCE § 272, at 804–08 (3d ed.1984); C. Wright, FEDERAL PRACTICE AND PROCEDURE, CRIMINAL § 489, at 740 (2d ed.1982); 2 Wigmore, EVIDENCE § 288, at 208 (Chadbourn rev.1979)).

Applying these standards to this case, I find no reason to disturb the court's prior determination to draw an unfavorable infer-ence from plaintiffs' unexplained failure to call Dr. Geraci. Dr. Geraci treated Mrs. DiPirro during the period closely following the August, 1994 accident. His treating phy-sician relationship with Mrs. DiPirro sug-gests that he should be considered "peculiar-ly within [plaintiffs'] power to produce...." *Graves v. United States, supra,* 150 U.S. at 121, 14 S.Ct. 40 (cited in *United States v. Torres, supra,* 845 F.2d at 1169). The nerve conduction studies he performed on Mrs. Di-Pirro showed "bilateral median sensorimotor neuropathy consistent with mild carpal tun-nel syndrome." *DiPirro v. United States, supra,* 43 F.Supp.2d at 333–334. In light of the fact that this assessment could be con-strued as contrary to plaintiffs' claim that Mrs. DiPirro's carpal tunnel syndrome was caused by the August 10, 1994 accident (in which she sustained only right-sided inju-ries), Dr. Geraci's testimony would have been helpful and not merely cumulative of other treating physicians' testimony.

In addition, notwithstanding the propriety of the adverse influence drawn in this case, the court would have reached the same con-clusion in any event.

Accordingly, plaintiff has failed to convince the court that it should alter or amend the judgment previously entered on the findings of fact and conclusions of law which the court made in light of the adverse inference drawn from plaintiffs' unexplained failure to call Dr. Geraci.

## II. Defendant's Motion.

■ Under Rule 60(b)(3), "the court may relieve a party ... from a final judg-ment, order, or proceeding for ... fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other mis-conduct of an adverse party...."The rule applies to both intentional and unintentional misrepresentations. *Lonsdorf v. Seefeldt,* 47 F.3d 893, 897 (7th Cir.1995); *Plattner v. Strick Corp.,* 102 F.R.D. 612, 614 (N.D.Ill. 1984). In order to obtain relief under Rule 60(b)(3), the moving party must present clear

and convincing evidence of material misrepresentations which prevented the party from fully presenting a meritorious claim or defense, or which otherwise affected the outcome of the case. *Dow Jones & Co., Inc. v. WSJ Inc.,* 133 F.3d 906, 1998 WL 2370 (2d Cir.1998); *PMC, Inc. v. Atomergic Chemetals Corp.,* 122 F.3d 1057, 1995 WL 595557 (2d Cir.1995); *Fleming v. New York Univ.,* 865 F.2d 478, 484 (2d Cir.1989); *Green v. Foley,* 856 F.2d 660, 665 (4th Cir.1988), *cert. denied,* 490 U.S. 1031, 109 S.Ct. 1769, 104 L.Ed.2d 204 (1989). The court must then consider the evidence by balancing "the competing policy interests of the finality of judgment against fundamental fairness in light of all of the facts." *Lonsdorf v. Seefeldt, supra,* 47 F.3d at 897 (citing *Square Construction Co. v. Washington Metro. Area Transit Auth.,* 657 F.2d 68, 71 (4th Cir.1981)).

■ I find that the defendant has met its burden here. Mrs. DiPirro testified at the trial in this case that she did not work at Pizza DiPirro between August 10, 1994 and January of 1998, when she returned on a voluntary, part-time basis (*see* Item 52, p. 94). Based in significant part on this testimony, and considering the inconsistent evidence presented at trial "as to whether, and when, Mrs. DiPirro was able to return to work ...," the court found that Mrs. DiPirro was totally disabled from work between August 10, 1994 and January 5, 1998 (the first full workday after the holidays). *DiPirro v. United States, supra,* 43 F.Supp.2d at 333–334. The court used this period as a basis for awarding damages representing Mrs. DiPirro's lost wages of $400 per week for a total of 170 weeks. *Id.* at 344.

On December 8, 1998, Mrs. DiPirro testified at the criminal trial of Aneudy Casillas, who was on trial for an attempted robbery that took place at Pizza DiPirro on November 14, 1997. Mrs. DiPirro gave sworn testimony indicating that she was working on November 14, 1997, and that she had been working three days a week for at least six weeks prior to that date (*see* Item 23, Ex. D, pp. 4, 14, 21).

I find this evidence to be clear and convincing proof of a misrepresentation, intentional or not, material to the court's determination of plaintiffs' damages for economic loss. I also find that, since entry of final judgment for the purpose of appeal has been suspended by the pendency of the parties' post-trial motions, *see* Fed.R.App.P. 4(A), the interest of fundamental fairness to defendant outweighs the interest in finality. Accordingly, I find it appropriate to amend the judgment to reflect a $3,120.00 reduction in the damages awarded for economic loss (six weeks prior to the week ending November 14, 1997, and seven weeks subsequent, for a total of 13 weeks × $400/week = $5,200.00 × three-fifths (representing Mrs. DiPirro's part-time status) = $3,120.00).

### CONCLUSION

For the foregoing reasons, plaintiffs' motion **(Item 66)** for amendment of the judgment is denied. Defendant's motion **(Item 70)** for relief from the judgment is granted, and the judgment is amended to reflect a $3,120.00 reduction in the amount of damages awarded to plaintiffs. The Clerk of the Court is directed to enter final judgment in favor of plaintiffs in the amount of $50,880.00.

**SO ORDERED.**